UNITED STATES of America

v.

**FLEET MANAGEMENT LTD., et al.**

**Criminal Action No. 07–279.**

United States District Court, E.D. Pennsylvania.

Oct. 29, 2007.

Joseph A. Walsh, II, Marc Greenberg, Keesal Young & Logan, Long Beach, CA, W. Bruce Pasfield, Alston & Bird LLP, Washington, DC, Carl R. Woodward, III, Carella, Byrne, Bain, et al., Roseland, NJ, for Fleet Management, Ltd., Parag Raj Grewal and Yevgen Dyachenko.

Joan E. Burnes, U.S. Dept. of Justice, U.S. Atty., Philadelphia, PA, Jeffrey Phillips, U.S. Department of Justice, Environmental & Natural Resources, Washington, DC, for United States of America.

## MEMORANDUM

JOHN R. PADOVA, District Judge.

This is a maritime case that involves the alleged discharge of oil-contaminated sludge and bilge waste into the ocean. The Government indicted the three Defendants—Fleet Management ("Fleet"), a shipping company; Parag Rag Grewal, the Captain of the Valparaiso Star (the "Ship"); and Yevghen Dyachenko, the Chief Engineer of the Ship—on charges of conspiracy in violation of 18 U.S.C. § 371; failing to maintain an accurate oil record book in violation of 33 U.S.C. § 1908(a), 18 U.S.C. § 2 and 33 C.F.R. 151.25; false statements in violation of 18 U.S.C. § 1001; and obstruction of justice in violation of 18 U.S.C. §§ 1505, 1515(b) and 2.

Defendants have filed a Joint Motion to Suppress Evidence obtained from the hard drives of three computers on the Ship, contending that the applicable search warrant was a constitutionally invalid general warrant, was overbroad, and was not supported by probable cause. The Government primarily argues that the motion should be denied because the agents executing the warrant acted in good faith, but it also asserts that the warrant is not a general warrant, and was sufficiently particular and supported by probable cause. As we find that the warrant was a general warrant that was invalid on its face and incapable of good faith execution, we grant Defendants' Motion to Suppress.

## I. Background

In the course of its investigation of Defendants' alleged criminal misconduct in this case, the Government entered into an agreement with Star Reefers, the owner of the Ship, to obtain mirror images of the hard drives from three of the Ship's computers. Star Reefers did not consent, however, to a forensic analysis or search of the data on the hard drives. As a result, on February 22, 2007, the Government applied for a warrant to search the images of the three computer hard drives.

The affidavit in support of the warrant application was prepared by Jason Burgess, a special agent from the EPA Criminal Investigation Division. According to the affidavit, on January 24, 2007, when the Ship was in port in Philadelphia, a Source of Information (the "SI") reported to local Customs and Border Protection officers that the Engineering Officer of the Ship had been ordering personnel to ille-

gally discharge sludge from the Ship. (Aff. ¶ 12.) Coast Guard inspectors boarded the Ship that same morning, interviewed other crew members, and recovered, among other things, the Ship's Daily Tank Sounding Log, which is the log in which Ship personnel record the amount of oil in the Ship's holding tanks, and the Ship's Oil Record Book, in which personnel record internal transfers of waste oil as well as overboard discharges of oily waste. (*Id.* ¶ 13b.) In reviewing the written records, the inspectors identified apparent inconsistencies between the documented oil transfers and the amount of oil in the Ship's holding tanks, as well as drops in waste oil tank levels that did not correspond to entries in the Oil Record Book. (*Id.* ¶ 13c.)

Based on this and other information contained in the affidavit, Burgess stated in the affidavit that he had reason to believe that the operators of the Ship had manipulated the piping to and from the Ship's waste tanks and pollution control equipment so that harmful oily waste could be discharged overboard without proper treatment, storage or disposal. (*Id.* ¶ 24.) He also stated that he believed that the operators had attempted to disguise their illegal activity by falsifying the Oil Record Book and other records to make it appear that they had properly handled and documented the Ship's fuel wastes, and had knowingly made false statements to regulatory investigators by denying any illegal discharges. (*Id.* ¶¶ 25–26.) Burgess averred, based on his experience and training, that it was necessary to examine the internal hard drives of the Ship's computers to determine whether the Tank Sounding Log, Oil Record Book, and pollution control equipment were maintained and operated properly. (*Id.* ¶ 27.)

The warrant application had two attachments. Attachment A detailed the property to be searched as follows:

> One government owned Western Digital Hard Drive # WCAL7265528 storing imaged hard drives from: a) the Valparaiso Star Bridge Computer SN # 2FAVH10 with a Western Digital hard drive SN# WMA96496339, b) Chief Engineer's Computer SN # 13523192JK with a Maxtor hard drive SN# 2526C0055ME87D, and c) the Captains's Computer SN # L9B270 with Western Digital hard drive WMAM9M900984.

Meanwhile, Attachment B specified that the Government sought authority to seize the following property from those computers:

> Any and all data in the computers or contained in the computer storage devices including, but not limited to, software and all records including e-mail, photographs and documents relating to the ship's operation, engineering, maintenance, pollution control equipment, navigational charts, and crew.

The Magistrate Judge issued the requested warrant, which authorized the seizure of the property set forth in Attachment B, on February 22, 2007. The following day, Burgess filed with the Court Clerk's office a search warrant Return, which described the inventory taken pursuant to the warrant as "Data from the three imaged computers." He did not, however, swear the Return in front of the Magistrate Judge and, therefore, the copy he filed did not contain the Magistrate Judge's signature. (9/24/07 N.T. at 124.) On June 6, 2007, after realizing his error, Burgess brought the Return to the Magistrate Judge for his signature. (*Id.*) Before presenting the Return to the Magistrate Judge, he supplemented the description of the inventory of property taken pursuant to the warrant by adding the following to the prior description:

"All of the Data From the Hard rives [*sic*] as per Attachment B listing property to be seized," and specifically dating the addition "6/6/07." (*Id.* at 125.)

The agent who executed the search warrant was Charles Joseph Fehrman, a special agent with the United States Coast Guard Investigative Service. Burgess served the warrant on Coast Guard Special Agent Jeffrey Lukowiak, because the Coast Guard was in possession of the mirror images of the three computer hard drives. (*Id.* at 121–22). Agent Lukowiak then gave the warrant and a list of search terms to Fehrman, who supervised the Electronic Crime Section of the Computer Forensic Technical Services Division of the Coast Guard. (*Id.* at 188, 201.) The search terms included phrases such as "bilge water," "oil discharge," and "oil record book," as well as more generic terms, such as "survey," "training," "United States," "class," and "legal." (*See* Attach. A to CGIS Rpt. of Investig., attached as Ex. 2 to Gov't Mem). The search instructions also recommended looking for Word documents that started with the phrase "M.C. Valparaiso Star At Sea," and for email communications for the period from November 1, 2006 to January 23, 2007.[1] (*Id.*) According to Fehrman, he reviewed the warrant affidavit, but he searched the data on the basis of the search terms, without reference to the warrant, and did not set any time frame to limit the scope of the search of the data, including the emails. (9/24/07 N.T. at 204–06, 208, 211–13.) His understanding, however, was that he was looking for documents regarding oily water discharges and waste discharges. (*Id.* at 200–01).

Ultimately, from the approximately 359,000 files on the hard drives, Fehrman provided 1663 documents to the Government for review. (*Id.* at 202–03, 213.) Although these 1663 documents have not been provided to us, the Government represented in a telephone conference with the Court that the only documents from the seizure that it intended to use in its case-in-chief were certain emails from December 2006, and a November 2005 report from a meeting of Defendant Fleet's Safety Committee (the "November 2005 Report"), which concerns oil discharges and was attached to the Government's initial brief in opposition to Defendants' suppression motion. (10/15/07 N.T. at 20–21.)

Defendants filed their Motion to Suppress the evidence seized from the computers on July 25, 2007. On September 24, 2007, we held a hearing on the Motion, and heard testimony from both Burgess and Fehrman. The parties filed supplemental briefs in support of their respective positions on October 8, 2007.

## II. Legal Standard

■ The Fourth Amendment guarantees the right of persons to be secure from "unreasonable searches and seizures" and provides that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is established if there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Meanwhile, the particularity requirement demands that the place to be

---

1. The instructions stated that email correspondence from the Ship to any outside entity from November to January was "essential," as there had to be "some type of correspon- dence based on [the SI] getting fired for failure to do his work." (*Id.*) There is no mention of the SI's firing in the warrant affidavit.

searched and items to be seized be described with sufficient particularity so as to leave "nothing ... to the discretion of the officer executing the warrant." *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757 (1925); *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.") The "principal means today for effectuating the rights secured by the Fourth Amendment is through the judicially created exclusionary rule." *United States v. Christine,* 687 F.2d 749, 757 (1982).

 The party who files a motion to suppress evidence bears the burden of proving the Fourth Amendment violation. *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The applicable burden of proof for a suppression motion is a preponderance of evidence. *United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The Government bears the burden of establishing the good faith exception to the federal exclusionary rule. *United*

*States v. Leon,* 468 U.S. 897, 924, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

## III. Discussion

 As a threshold argument in their Motion to Suppress, Defendants contend that the search warrant for the data on the three computer hard drives constituted a general warrant, which placed no limitations on the Government's computer search, and that under Supreme Court and Third Circuit precedent, all evidence seized pursuant to that general warrant must be suppressed.[2] We agree.[3]

 By requiring that warrants particularly describe property to be seized, the Fourth Amendment prohibits the issuance of general warrants. *See Christine,* 687 F.2d at 752 (3d Cir.1982) ("The particularity requirement 'makes general searches ... impossible.' " (quoting *Marron,* 275 U.S. at 196, 48 S.Ct. 74)). Indeed, the Amendment's particularity requirement is specifically intended "to prevent the police from undertaking a general, exploratory rummaging through a person's belongings." *Bartholomew v. Commonwealth of Pennsylvania,* 221

---

**2.** The Government argues, based on *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, that before we consider whether the warrant was general, we must consider whether the good faith exception to the exclusionary rule applies, *i.e.,* whether the officers executing the search did so in good faith and in reasonable reliance on the warrant's authority. (Gov't Suppl. Mem. at 7–8.) However, *Leon* does not require courts to first consider good faith; it simply gives them the option to do so. *See* 468 U.S. at 925, 104 S.Ct. 3405. Moreover, *Leon* specifically recognizes that "[i]f the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue." *Id.*

**3.** The Government argues in a footnote to their supplemental memorandum that the De-

fendants have not established that they have standing to seek suppression, because they have not offered any evidence on whether they had a reasonable expectation of privacy in the areas searched or the items seized. (Gov't Suppl. Mem at 2 n. 2) (citing *United States v. Welliver,* 976 F.2d 1148, 1153 (8th Cir.1992)). However, at the September 24, 2007 hearing, the Government took the position that only the individual Defendants lacked standing. (*See* 9/24/07 N.T. at 183–85, 217–18.) Moreover, without reaching the question of the individual Defendants' standing, it is plain that Defendant Fleet, as the operator of the ship, had a reasonable expectation of privacy in the Ship's computers. Accordingly, we find that, at a minimum, Defendant Fleet has standing to bring the instant motion and we consider the motion on that basis.

F.3d 425, 428 (3d Cir.2000) (quoting *United States v. Johnson*, 690 F.2d 60, 64 (3d Cir.1982)). A general warrant is one that so clearly violates the particularity requirement that it "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendants'] papers in search of criminal evidence." *Christine*, 687 F.2d at 753; *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (stating that the problem with general warrants is that they authorize "a general exploratory rummaging in a person's belongings"). "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (quoting *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n. 5, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984)). Furthermore, "[i]t is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed." *Christine*, 687 F.2d at 758.

In clarifying how to identify general warrants, the Court of Appeals for the Third Circuit has cited as examples of general warrants those warrants that authorize the search of "smuggled goods," "obscene materials," "books, records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings, and other instruments concerning the Communist Party of Texas," "illegally obtained films," and "stolen property." *Id.* at 753 (citations omitted). It has also distinguished such warrants from warrants that it characterizes as "simply overly broad." *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d 137, 148 (3d Cir.2002). As it explained, a warrant that is merely overly broad "describe[s] in both specific and inclusive generic terms what is to be seized," but authorizes the seizure of items for which there is no probable cause. *Id.* (alteration in original) (quoting *Christine*, 687 F.2d at 753–54). A merely overly broad warrant, unlike a general warrant, can be cured by redaction, "that is, by 'striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment.'" *Id.* (alteration in original) (quoting *Christine*, 687 F.2d at 754). Moreover, "evidence seized pursuant to an overly broad warrant need not be suppressed if the good faith exception applies." *Id.*

In *Christine*, the Third Circuit applied its test for distinguishing general and merely overbroad warrants. *Christine* involved a warrant that was issued in an investigation of alleged fraud in HUD's Title I Home Insurance Program (the "Program"). More specifically, the Government alleged that one particular Builder (the "Builder") had procured HUD loans for uncreditworthy individuals by bribing a HUD loan officer at the Collective Federal Savings and Loan Association ("Collective"). The warrant under consideration by the Court authorized the seizure of (1) all folders and documents relating to home improvement and home improvement contracts pursuant to the Program; (2) all checks, check stubs and bank statements reflecting the receipt and disbursement of funds through the Builder dating back to January 1, 1997; (3) all general ledgers, general journals, cash receipt disbursement ledgers and journals dating back to January 1, 1997; (4) all correspondence to and from and submissions to Collective; (5) all other documents, papers, instrumentalities and fruits of the crime of submission of false statement in connection with the Program, as well as any evidence of a scheme to de-

fraud HUD or Collective or any other creditor by U.S. Mails. *Christine,* 687 F.2d at 751. The *Christine* Court found that warrant to be merely overly broad, not general, because it did not "vest the executing officers with unbridled discretion in rummaging through ... papers," but rather, described "in both specific and inclusive generic terms what was to be seized," *e.g.,* folders, checks, ledgers, and correspondence. *Id.* at 753. As such, the Court concluded that "the magistrate, rather than the officer, determined what was to be seized." *Id.*

More recently, in *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents,* 307 F.3d 137 (3d Cir.2002), the Third Circuit again considered whether a warrant was general or merely overly broad. In that case, the warrant authorized the seizure of:

1. Receipts, invoices, lists of business associates, delivery schedules, ledgers, financial statements, cash receipt, disbursement, and sales journals, and correspondence.

2. Computers, computer peripherals, related instruction manuals and notes, and software in order to conduct an off-site search for electronic copies of the items listed above.

*Id.* at 144. Again, the Court concluded that the warrant was merely overly broad, not general, explaining that although the scope of the warrant was "extensive" and "indubitably broad," it described in " 'inclusive generic terms' " what was to be seized and did not "vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished." *Id.* at 149 (quoting *Christine,* 687 F.2d at 753).

In the instant case, unlike the situation in *Christine* or *Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents,* the warrant at issue did *not* describe in "specific and inclusive generic terms" what was to be seized, and *did* "vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished." *Id.* Indeed, the warrant authorized the seizure of *"any and all data"* from the three seized computers, "including, *but not limited to"* certain types of data relating to the Ship's "operation, engineering, maintenance, pollution control equipment, navigational charts, and crew." (*See* Attach. B to the Warrant Appl.) (emphasis added). It therefore placed absolutely no limitation on the data to be seized and "vest[ed] the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendants'] papers in search of criminal evidence." *Christine,* 687 F.2d at 753. Given the lack of guidance in the warrant itself, it is not surprising that the officer who conducted the forensic analysis of the computer hard drives relied only on the list of search terms that were provided to him. (9/24/07 N.T. (Fehrman) at 204–06, 213.) Meanwhile, the search terms, while primarily geared toward obtaining information about overboard discharges of waste, do not derive that focus from the general warrant, which contains no reference to overboard discharges. As such, it is plain that the executing officers exercised total discretion in the search, making their own determinations as to what they would seize from the hard drives, without any actual judicial control.[4]

The Government asks that we focus on the particularity with which At-

---

**4.** The Government does not argue that the affidavit established probable cause for a generalized seizure of all of the data on the three hard drives or that there was any other basis for such a generalized seizure.

tachment A to the warrant application identifies the three computer hard drives themselves, and emphasizes that the warrant clarifies the "any and all data" language by following it with the phrase "including, but not limited to [data] relating to the ship's operation, engineering, maintenance, pollution control equipment, navigational charts, and crew." We do not find these arguments persuasive. First, it is plainly insufficient to identify the computer hard drives with particularity as the hard drives were merely the property to be searched, not the property to be seized. As the Fourth Amendment makes clear, a warrant must identify with particularity *both* the property to be searched *and* the property to be seized, and here, it is the description of the property to be seized that is at issue. *See* U.S. Const. amend. IV (requiring warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized").

Second, we find that the warrant's "including, but not limited to" clause does not add particularity to the otherwise general warrant as it, by its own terms, imposes no limitation on the data to be seized. While the Government argues that "the warrant describes the data to be seized as relating to the ship's operation, engineering, maintenance, pollution control equipment, navigational charts, and crew," that is simply not the case. (Gov't Mem. at 29.) Rather, as stated above, the warrant describes the data to be seized as *"any and all data* in the computers . . . including, *but not limited to"* the general categories of data referenced by the Government. As such, it merely lists those general categories of data as types of data that are necessarily included in the broad seizure power. Thus, in actuality, the warrant placed no restriction on the data that the Government could seize from the hard drives.

We also reject the Government's suggestion that the affidavit that accompanied the warrant application somehow limited the scope of the warrant itself. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Groh,* 540 U.S. at 557, 124 S.Ct. 1284. Accordingly, "[t]he fact that the [warrant] *application* adequately described the 'things to be seized' does not save the *warrant* from facial invalidity." *Id.* Furthermore, most Courts of Appeals, including the Third Circuit, have held that an affidavit that accompanies the warrant can only be used to construe the scope of the warrant if the warrant "uses appropriate words of incorporation." *Id.* at 557–58, 124 S.Ct. 1284 (citing cases); *United States v. Yusuf,* 461 F.3d 374 (3d Cir.2006) (citing *Groh,* 540 U.S. at 558, 124 S.Ct. 1284). Here, the warrant did not incorporate the affidavit by reference and as a result, it cannot be used to add the particularity that the warrant itself is plainly lacking.

The Government also appears to argue, citing *United States v. American Investors of Pittsburgh, Inc.,* 879 F.2d 1087 (3d Cir. 1989), that we should find the warrant valid because it described the items to be seized with as much specificity as circumstances allowed. *Id.* at 1106. However, we simply do not agree that the circumstances here did not allow for greater specificity than "any and all data . . . including, but not limited to [a variety of data]." Among other possibilities, there was clearly no impediment to the Government using commonly-used search limitations, such as reference to the specific federal crimes being investigated or time parameters.[5] *See, e.g., Yusuf,* 461 F.3d at

---

5. Burgess confirmed at the September 24, 2007 hearing that the affidavit in support of the warrant application only referenced alleged misconduct between July 11, 2006 and

395 (finding no violation of particularity requirement where warrants were limited in three respects, including that they specified that agents were "searching for evidence of several specifically enumerated federal crimes," and search was limited in time); *United States v. Kow*, 58 F.3d 423, 427 (9th Cir.1995) (finding warrant to lack requisite particularity when it did not specify the suspected criminal activity and did not limit the scope of the seizure to the time frame within which the suspected criminal activity took place). We therefore reject the Government's assertion that the circumstances did not allow for greater specificity.

 Relying on *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Government also argues that it is inappropriate to suppress the evidence seized pursuant to the warrant because the officers who executed the warrant were acting in good faith. However, we read Third Circuit precedent to prohibit the use of the good faith exception in connection with general warrants. *See Christine*, 687 F.2d at 758 ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed."); *Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d at 149 (contrasting general warrants with overly broad warrants by stating, in part, that evidence seized pur-

suant to an overly broad warrant need not be suppressed if the good faith exception applies.) Moreover, even if this were not the case, as even the Government acknowledges, there are certain circumstances in which an officer's reliance on a warrant cannot be reasonable, and one of those circumstances is when the warrant is so facially deficient that it fails to particularize the place to be searched or the items to be seized.[6] *Id.* at 923, 104 S.Ct. 3405. In fact, the Third Circuit has repeatedly stated that in the face of such a facial deficiency, the good faith exception simply does not apply. *Hodge*, 246 F.3d at 308 (citing *Williams*, 3 F.3d at 74 n. 4). Here, the description in the warrant is just such a facial deficiency. As explained above, the warrant imposed absolutely no parameters on the executing officers' search, effectively authorizing them to seize "any and all data" in the computers.

The Government contends that even in the face of a facial deficiency, the good faith exception can apply unless the facial deficiency "was so obvious that a law enforcement officer, without legal training, should have realized, upon reading the warrant, that it was invalid and should thus have declined to execute it." *Ninety–Two Thousand Four Hundred Twenty–Two Dollars*, 307 F.3d at 146. However, "[g]iven that the particularity requirement is set forth in the test of the Constitution,

January 23, 2007. (9/24/07 N.T. at 158.) Nevertheless, there were no date restrictions in the warrant or employed in the search. (*Id.* (Fehrman) at 211–212.)

The Third Circuit has stated that the lack of a time restriction alone renders a warrant only overly broad, not general. *Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents*, 307 F.3d at 151. However, as explained above, the warrant here lacks more than a mere time restriction; it lacks any particularity whatsoever.

6. An officer's reliance on a warrant is also unreasonable if the magistrate judge issued

the warrant "in reliance on a deliberately or recklessly false affidavit." *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir.2001) (citing *United States v. Williams*, 3 F.3d 69, 74, n. 4 (3d Cir.1993)). Here, Defendants argue that the affidavit in support of the warrant application contained false and misleading statements that made reliance on the resulting warrant unreasonable. We do not reach this issue, however, because we find that the good faith exception does not apply here for other reasons.

no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh,* 540 U.S. at 563, 124 S.Ct. 1284 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The warrant here plainly did not comply with the particularity requirement, because it did not limit the scope of the officers' search in any way, and we are confident that it would not take legal training for a officer trained in law enforcement to recognize as much. Accordingly, we find that the good faith exception simply cannot apply here.

 Finally, the Government suggests that if we find the warrant to be overly broad and not subject to the good faith exception, instead of suppressing all of the evidence seized pursuant to the warrant, we should redact the warrant by " 'striking from the warrant those severable phrases and clauses that are invalid for lack of probable cause or generality and preserving those severable phrases and clauses that satisfy the Fourth Amendment.' " (Gov't Suppl. Mem. at 27 (quoting *Christine,* 687 F.2d at 754)). When such redaction occurs, "[m]aterials seized under the authority of those parts of the warrant struck for invalidity must be suppressed, but the court need not suppress materials seized pursuant to the valid portions of the warrant." *Christine,* 687 F.2d at 754. However, redaction is not appropriate in connection with general warrants as such warrants have no valid portions. *Id.* at 758 ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed."); *Ninety–Two Thousand Four Hundred Twenty–Two Dollars and Fifty–Seven Cents,* 307 F.3d at 149 (contrasting general warrants with overly broad warrants by stating, in part, that overly broad warrants can be cured by redaction). Furthermore, we can conceive of no way to redact the warrant here to produce a warrant that would meet the Fourth Amendment's particularity requirement, and the Government suggests no way of doing so. Even the warrant's somewhat more specific description of data in the "including, but not limited to" clause, *i.e.,* "software and all records including e-mail, photographs and documents relating to the ship's operation, engineering, maintenance, pollution control equipment, navigational charts, and crew," is impossibly broad, arguably encompassing every conceivable document generated in the operation of the Ship at any point in time. "We therefore find redaction to be an inappropriate remedy here." [7]

---

**7.** Citing the inevitable discovery doctrine, the Government also argues in a footnote that the November 2005 Report should not be suppressed because it was inevitable that the Government would have discovered the report by other means. (Gov't Mem. at 29 n. 5.) Under the Supreme Court's decision in *Nix. v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received." *Id.* at 444, 104 S.Ct. 2501. Here, the Government asserts that prior to the execution of the warrant at issue, it issued a subpoena to Defendant Fleet and Star Reefers that clearly covered the November 2005 Report, and it points to a Second Circuit case for the proposition that it may rely on the subpoena power as one way to meet its burden of proving inevitable discovery if it can demonstrate a substantial and convincing basis for believing that the requisite information would have been obtained by subpoena. *See United States v. Eng,* 971 F.2d 854, 860 (2d Cir.1992). Defendants respond, also in a footnote, that the inevitable discovery doctrine should not be applied to permit admission of the Report, because the document was not located in advance of the Indictment and as a result, was never produced in response to the subpoena. (Defs.' Reply Mem. at 8 n. 3.) On the existing record, we

## IV. Conclusion

We are acutely aware that the actual search the Government conducted on the three hard drives was narrower than that authorized by the warrant, and that the amount of data seized was but a small percentage of the data on the hard drives. Furthermore, although the parties have not provided us with copies of all of the data seized, we are inclined to believe that had the warrant been properly particularized to identify only data that the affidavit had established probable cause to seize, it may very well have authorized the seizure of at least a portion of the data that the Government seized pursuant to the general warrant. Nevertheless, the fact remains that the warrant did not even attempt to differentiate between data that there was probable cause to seize and data that was completely unrelated to any relevant criminal activity. Under these circumstances, the warrant manifested no judicial control over the search of the hard drives, but rather, left it entirely to the executing officers' discretion to determine what on the hard drives could and could not be seized. *See Groh*, 540 U.S. at 561, 124 S.Ct. 1284 ("Even though petitioner acted with restraint in conducting the search, 'the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.' " (quoting *Katz v. United States*, 389 U.S. 347, 356, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967))). It thereby did nothing to prevent a general, exploratory rummaging through the Defendants' belongings, which the Fourth Amendment prohibits. Defendants' Motion to Suppress is therefore granted insofar as it seeks suppression of the evidence seized from the hard drives.[8] To the extent that the motion seeks to prohibit Defendants from any "derivative use" of that evidence, we will await specific applications with respect to evidence that arguably constitutes a derivative use, and will address the admissibility of such evidence at that time.

An appropriate Order follows.

### ORDER

**AND NOW,** this 29th day of October, 2007, upon consideration of Defendants' Motion to Suppress (Docket No. 59), and all documents filed in connections therewith, and after a hearing on September 26, 2007, **IT IS HEREBY ORDERED** that:

1. The Motion is **GRANTED** in that all evidence seized pursuant to the Government's searches of Government-owned Western Digital Hard Drive # WCAL7265528 storing the imaged hard drives from three computers on the Valparaiso Star is **SUPPRESSED;** and

2. The Motion is **DEFERRED** insofar as it seeks return of the imaged hard drives. On or before November 9, 2007, Defendants shall make a separate application for return of the hard drives, detailing the authority for such an order. On or before November 16, 2007, the Government shall respond to that application with any contrary authority as well as a de-

---

find that the Government has not met its burden of proving that it would have inevitably discovered the November 2005 Report, and we therefore refuse to grant the requested relief under the inevitable discovery doctrine at this time.

8. Defendants also request that the Government be required to return the mirror images of the three computer hard drives to them pursuant to Federal Rule of Criminal Procedure 41(e). However, the Government obtained the mirror images of the hard drives with Star Reefers's consent, and its retention of the mirror images in no way deprives Defendant Fleet or Star Reefers of access to the original computers for their own use. Accordingly, we defer our ruling on this issue, pending further briefing.

tailed explanation of any further use it intends to make of the hard drives.