IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE     )
    )
V.     )    I.D. NO.: 1704002527
    )
JAMAR WATERS     )
    )
    Defendant.     )

Submitted: January 22, 2020
Decided: January 30, 2020

**MEMORANDUM OPINION**

*Defendant's Motion to Suppress.*
**GRANTED IN PART, DENIED IN PART**.

Mark A. Denney, Jr., Esquire and Marc C. Petrucci, Esquire, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Attorneys for the State of Delaware.

Alicea A. Brown, Esquire, John S. Edinger, Esquire, and Meghan E. Crist, Esquire, Assistant Public Defenders, Office of Defense Services, Wilmington, Delaware. Attorneys for Defendant.

**BUTLER, J.**

This is a murder case in which Jamar Waters ("Defendant") has moved to suppress certain electronic evidence obtained as a result of a search warrant. Upon consideration, the Court will limit the scope of this overly broad warrant, and permit introduction of the evidence as limited.

**FACTS**

A search warrant was authorized in June of 2016. The warrant recites that on April 22, 2016, there was a home invasion robbery in Townsend, Delaware. Three occupants of a dwelling were confronted by two masked robbers who forced their way into the apartment. One of the robbery victims struggled with one of the robbers and was shot to death at the scene. Defendant was subsequently identified as a suspect and was positively identified by one of the surviving victims as the shooter.

The warrant further recites that police had identified a cell phone number that "Jamar Waters was using on or about the day of the homicide" and police sought a warrant issued to Verizon Wireless to obtain "call detail records with corresponding cellular site locations related to all incoming and outgoing calls, SMS and MMS messages, any records pertaining to cell tower registration, cell tower sectors with azimuth readings" for the period of April 18, 2016 through May 2, 2016.[1]

Thus, the warrant was not one seeking the electronic contents of the phone itself, but rather from a "third party" for the historical cell site location information

---

[1] Motion to Suppress. D.I. 33 Ex. B.

1

("HCSLI"), seeking the whereabouts of the cell phone during the 4 days before and 2 weeks after the homicide.

The warrant is attacked by the Defendant as an overly broad, general warrant that does not even connect the phone to the Defendant at the time of the crime.

The Court notes that this 2016 warrant must pass muster under the more exacting scrutiny demanded by later decisions.[2] Hindsight, being what it is, perhaps the draftsmanship today would be somewhat more precise. But the question here is not whether the warrant represents the state of the art in precision, but rather whether it is so constitutionally defective as to require suppression of the fruits thereof.

## DISCUSSION

Those who follow Delaware law on electronic searches are surely familiar with the Delaware Supreme Court's 2018 decision in *Wheeler v. State*.[3] In *Wheeler*, the Court invalidated a warrant that sought electronic evidence of witness intimidation. The warrant permitted a search of all digital media, without regard to a temporal limitation, giving law enforcement permission to seek everything "from child pornography to tax returns."[4] The defendant was indicted for possession of child pornography that was found on his electronic devices.

---

[2] *See e.g., Carpenter v. United States,* 138 S.Ct. 2206 (2018); *Wheeler v. State,* 135 A.3d 282 (Del. 2016); *Buckham v. State,* 185 A.3d 1 (Del. 2018).
[3] 135 A.3d 282.
[4] *Wheeler* 135 A.3d at 303, citing *U.S. v. Riccardi,* 405 F.3d 852, 863 (10th Cir. 2005), citing *Maryland v. Garrison,* 480 U.S. 79, 84 (1987).

The *Wheeler* warrant had two problems: its lack of particularity in the electronic data sought and its lack of a temporal limitation on the data to be searched. As to the lack of a temporal limitation, the Court said it was "hesitant to prescribe rigid rules and instead reiterated that warrants must designate the things to be searched and seized as particularly as possible."[5]

In this case, the warrant does contain a temporal limitation – two days before and two weeks after the homicide – but it is fairly subject to attack for a lack of articulation of where and why that particular window of time was chosen. We will return to this issue presently.

*Buckham v. State*[6] was the other significant Delaware Supreme Court decision informing the Court's consideration of the instant motion. In *Buckham*, police secured a warrant for the defendant's cell phone, supported by their belief that it would contain GPS location data as to his whereabouts in the days following the offense. The search yielded a trove of Facebook messages containing damaging admissions by Buckham. The State sought introduction of these Facebook admissions and was permitted to do so after the trial court denied Buckham's motion to suppress.

---

[5] *Id.* at 305.
[6] *Buckham* 185 A.3d 1.

3

The trial court was skeptical about the generalized allegations of the warrant but noted that the warrant stated that GPS data from the phone "might help the police determine where he had been while he was at-large and, perhaps, lead them to the gun or other evidence of the crime."[7] In the trial court's view that was enough probable cause to support the warrant.

The Delaware Supreme Court reversed, but notably, it did not reverse the trial court's finding of probable cause for the warrant to search the phone for GPS data. Rather, the Court held that the probable cause to search the phone for GPS data did not include probable cause to search Buckham's Facebook entries. Since it was the Facebook entries that the State introduced at trial, the error was plain and the conviction was reversed.

In reviewing the trial court's finding of probable cause to search the phone for GPS data, the Court said "So despite the Court's view that the affidavit did only "a minimal amount of work to try to justify the warrant" and "[s]urely" could have been better, the affidavit's suggestion that a search of the phone could uncover GPS data that could lead the police to further evidence was enough to uphold the magistrate's determination that there was probable cause to search."[8]

---

[7] *Id.* at 17.
[8] *Id.*

Perhaps that is a less than enthusiastic endorsement of the trial court's holding, but the point remains that the recovery of location data to determine a suspect's whereabouts at a relevant point in time is forensically logical and may be an object of a search in electronic data.

The data sought here was not the Facebook or social media or private text messages stored on the phone. Rather, it was HSCLI coordinates of the phone itself, provided by the cell phone company. While the need for probable cause for either search is the same the likelihood that the search can or will stray into unrelated files or search terms is not present when the phone itself is not being searched and the only thing sought is HCSLI from the provider.[9]

In this case, the affidavit recited that the Defendant was known to have had a cell phone with a certain cell number on the date of the murder. The affiant thus does not provide direct information that the Defendant was in possession of the phone on the date or time of the homicide. But the Court believes possession of the phone follows logically from the developing case law in this area.[10]

---

[9] *Carpenter,* 138 S.Ct. at 2217. ("CSLI allows reconstruction of the subject's specific movements, intimate and otherwise: As with GPS information, the time-stamped data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations.")

[10] *E.g., Buckham,* 185 A.3d at 17 (in response to an affidavit observation that "many people communicate through cellular phones, the Court comments "who doesn't in this day and age?"). *See also Carpenter v. United States, 138 S.Ct. 2206, 2211 (*S. Ct. 2018) ("There are 396 million cell phone service accounts in the

Having found that the affidavit fairly suggests that the Defendant was in possession of the phone at the time of the crime, there is at least probable cause to believe that the HCSLI location data of the phone will provide evidence important to the guilt or innocence of the accused. The Court therefore finds that a warrant demonstrating probable cause to believe that the Defendant was in possession of a cell phone on or about the date of the crime provides probable cause to believe that cell site data as to the phone's location at the time of the crime will be helpful in determining the Defendant's whereabouts at the time the offense occurred.

The more provocative question raised by this warrant is the request to search for location data from 4 days prior to 2 weeks after the homicide. No part of the affidavit articulates what evidence the government believes it will uncover from this expanded information. If the HCSLI from the date and time of the homicide is virtually self-evident, the HCSLI from the days before and weeks after is not at all self-evident.

Thus, confronted with a warrant that fails to demonstrate probable cause for the dates for which the warrant seeks information but that does demonstrate probable cause for information as to some relevant time period, the issue becomes whether

---

United States – for a Nation of 326 million people."); *Riley v. California,* 573 U.S. 373, 385 (2014) (cell phones are a "such a pervasive and insistent part of daily life that that the proverbial visitor from Mars might conclude they were an important feature of human anatomy").

the warrant may be unilaterally limited by the suppression court, or is the appropriate remedy suppression of all evidence derived from the defective warrant.

There are three decisions of this Court that deal with this issue. In *State v. Taylor*,[11] the State obtained a warrant to download all information in a cell phone, seeking information concerning messages or other data on the phone concerning events on two specific dates, approximately 3 days apart. Nonetheless, the warrant authorized, and the police did, download the entire contents of the phone. The affidavit did indeed support a finding of probable cause as to the specific dates and the State only sought introduction of the data from the small window of captured data. The Court denied suppression of the relevant data from the two specific dates.

A second decision can be found in *State v. Anderson*.[12] In *Anderson*, a search warrant for the digital contents of seven cell phones seized in connection with a drug racketeering prosecution was at issue. Although the criminal activity articulated in the probable cause affidavit occurred over a 3 month time period, the warrant authorized – and the police executed – a full dump of all data in all seven phones. Considering the defendant's argument that the appropriate remedy was suppression of all data, the Court refused and instead limited the suppression to those dates

---

[11] *State v. Taylor*, ID No. 1605012921A, (Del. Super. Feb. 16, 2018) (Medinilla J.) (TRANSCRIPT).

[12] 2018 WL 6177176 (Del. Super. 2018).

outside the range of dates for which probable cause was expressed in the probable cause affidavit.

Finally, in *State v. Reese*,[13] the Superior Court suppressed all evidence seized from a cell phone. Reviewing the *Wheeler* and *Buckham* cases, the Court discussed the problem of "top to bottom searches" of cell phone data, the obvious intrusiveness and the search's capacity to creep into areas quite distant from the probable cause. *Buckham*, for example, set forth probable cause to search for GPS data and resulted in Facebook posts. *Wheeler* set forth probable cause to search for evidence of witness intimidation and resulted in child pornography charges. In *Reese*, the Court found the subject warrant lacked particularity and thus fell within the *Wheeler/Buckham* line of cases – and not the *Taylor/Anderson* line of cases – that require suppression of all fruits of the search and do not permit simple limitation on the scope of the warrant.

Harmony in these decisions can be found in the difference between "general" warrants and warrants that are "merely" overbroad. The Third Circuit explained the difference:

> There is a legal distinction between a general warrant, which is invalid because it vests the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's] papers in search of criminal evidence, and an overly broad warrant, which describe[s] in both specific and inclusive general terms what is to be seized,' but 'authorizes the seizure of items as to which there is no

[13] 2019 WL 1277390 (Del. Super. March 18, 2019).

8

probable cause. As discussed above, an overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment. In contrast, the only remedy for a general warrant is to suppress all evidence obtained thereby.[14]

We have seen above that the warrant in this case was supported by probable cause to believe that the phone in question was in the Defendant's possession on the night of the murder and its cell site information may offer up evidence of the Defendant's whereabouts at the time of the crime. But the warrant and affidavit fail to offer probable cause as to what evidence, if any, might be gleaned from evidence of the phone's location 4 days before and 2 weeks after the murder and it thus authorizes the seizure of more cell site location information than is supported by probable cause. Thus, it is an overly broad warrant. But because it is particular in that it seeks only cell site location information and only over a specific period of time and does not authorize a "general rummaging" through all data on a cell phone, it cannot be characterized as a general warrant and suppression of all of its fruits cannot be the appropriate remedy.

---

[14] *United States v. Yusuf*, 461 F.3d 374, 393, n.19 (3rd Cir. 2006) (internal citations omitted). *See also Coolidge v. New Hampshire*, 403 U.S. 443 (1971) (a general warrant permits "a general exploratory rummaging in a person's belongings."); *State v. Westcott*, 2017 WL 283390, at *2 (Super. Ct. January 23, 2017) (a general warrant is one that fails to describe the data to be searched with particularity).

When a warrant is broader than the probable cause that supports it, for example in its temporal limitations, the Court may limit the scope of permissible evidence to that for which probable cause is present in the warrant.[15]

The warrant did not explain why cell site location information was needed in this case and it is only by inference that the Court believes the location information may help to determine whether the Defendant (or at least his cell phone) was present at the date and time of the crime. But what, if any, further inference can be made – that is, what expanded window of time logically flows from the affidavit of probable cause – is sufficiently ambiguous that the Court requested further briefing from the parties.

Counsel for Defendant has responded that the probable cause demonstrates that the HSCLI for the location of the phone at the exact moment the offenses occurred is all that the warrant establishes.[16] The State points to the affiant's declaration that it was believed that the Defendant came to the victim's residence in the "late afternoon" on the day before the homicide, "casing" the spot to which they

---

[15] *Supra* note 16 and accompanying text. *See also U.S. v. Christine*, 687 F.2d 749 (3rd Cir. 1982); *U.S. v. Fleet Mgmt. Ltd.*, 521 F.Supp.2d 436 (E.D. Pa. 2007).
[16] Defendant's Response to Court Order (quoting Affidavit of Probable Cause ⁋ 17) ("Your Affiant believes that the contents of the cell phone records of #443-553-7689 will assist in establishing Suspect-Jamar Waters location on Friday 04/22/2016 at approximately 0330 hours when the home invasion and homicide occurred.")

would return after midnight.[17]  The State believes "late afternoon" can fairly be put at 3:30 pm and the Court agrees.[18]

As to the end point, the State seeks to terminate the HSCLI 24 hours after the crime.  Although the justification for this is a bit skimpier than it is for the starting point, the basis for a finding of probable cause that the HSCLI will yield evidence of a crime presumes that the HSCLI will be probative of the whereabouts of the Defendant.  Demonstrating the whereabouts of the Defendant in the hours after the murder is certainly probative of whether he stayed within range of the cell tower for hours after the homicide – demonstrating that he remained within the locale of the crime scene or departed shortly thereafter.  The Court finds that the HSCLI for the 24 hours after the crime is a reasonable window within the probable cause laid out in the warrant.

The Court therefore **GRANTS** Defendant's Motion to Suppress in part and excludes the HSCLI before 3:30 pm on April 21, 2016 and after 3:45 am on April 23, 2016 and **DENIES** the Motion to Suppress the HCSLI for the period from April 21, 2016 at 3:30 p.m. until April 23, 2016 at 3:45 a.m.

**IT IS SO ORDERED**.

Judge Charles E. Butler

---

[17] Affidavit of Probable Cause ‖ 14.
[18] States Response to Court's Order.

11