*Anthony J. Richardson v. State of Maryland*, No. 46, September Term, 2021. Opinion by Biran, J.

**CONSTITUTIONAL LAW – FOURTH AMENDMENT – ABANDONMENT –** After a school resource officer broke up a fight in which Petitioner was involved, Petitioner's backpack dropped from his body to the ground. Petitioner reached for the backpack, but the officer picked up the backpack before Petitioner could do so. Without a further word, Petitioner fled the scene. The Court of Appeals held that, in these circumstances, Petitioner relinquished his reasonable expectation of privacy in his backpack and therefore abandoned it for purposes of the Fourth Amendment. Thus, the officer was permitted to search the backpack without a warrant.

**CONSTITUTIONAL LAW – FOURTH AMENDMENT – PARTICULARITY – CELL PHONE SEARCH WARRANT –** When the officer searched Petitioner's backpack, he discovered, among other things, a firearm and three cell phones. Police eventually obtained a warrant to search one of those cell phones. The Fourth Amendment mandates that a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." Here, even considering the incorporated supporting affidavit, the warrant to search the cell phone did not include any temporal limitation, it did not limit the contents or types of files on the cell phone that could be accessed and searched, and it contained no search protocols limiting how the officers could search for the evidence of the crime at issue. Instead, it contained catchall language that authorized officers to search everything on the phone. The Court of Appeals held that the search warrant violated the Fourth Amendment's particularity requirement, and thus was invalid.

**CONSTITUTIONAL LAW – FOURTH AMENDMENT – GOOD FAITH EXCEPTION –** The Court of Appeals held that the police officers acted reasonably in relying on the search warrant for Petitioner's cell phone. The incorporated supporting affidavit could reasonably be read to limit the search to evidence of the crime of robbery. In the absence of a decision of this Court stating that such a warrant would not satisfy the particularity requirement, the officers did not act unreasonably in relying on the warrant.

IN THE COURT OF APPEALS

OF MARYLAND

No. 46

September Term, 2021

---

ANTHONY J. RICHARDSON

v.

STATE OF MARYLAND

---

\*Getty, C.J.
Watts
Hotten
Booth
Biran
Battaglia, Lynne A.
    (Senior Judge, Specially Assigned)
McDonald, Robert N.
    (Senior Judge, Specially Assigned),

JJ.

---

Opinion by Biran, J.

---

Filed: August 29, 2022

\*Getty, C.J., now a Senior Judge, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.



Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

Chief Justice John G. Roberts observed in *Riley v. California* that modern cell phones are akin to powerful "minicomputers."[1] Because today's smartphones contain information touching on "nearly every aspect" of a person's life, "from the mundane to the intimate," an unfettered search of a cell phone by law enforcement will "expose to the government far more than the most exhaustive search of a house."[2] In *Riley*, the Supreme Court considered the privacy implications of widespread smartphone use for one of the exceptions to the Fourth Amendment's warrant requirement, a search incident to arrest. The Court concluded:

> Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life." The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple – get a warrant.[3]

The privacy concerns implicated by cell phone storage capacity and the pervasiveness of cell phones in daily life do not fade away when police obtain warrants to search cell phones. In the case before us here, police did obtain a warrant to search a suspect's cell phone. One of the questions we must decide in this case is whether that warrant complied with the Fourth Amendment's requirement to describe with particularity

---

[1] *Riley v. California*, 573 U.S. 373, 393 (2014).

[2] *Id.* at 395-96 (emphasis deleted).

[3] *Id.* at 403 (cleaned up).

"the place to be searched, and the persons or things to be seized"[4] or whether it was, in effect, a "general warrant" that allowed police to engage in the type of exploratory rummaging that led the Founders to adopt the protections of the Fourth Amendment.

After a school resource officer broke up a fight in which Petitioner Anthony J. Richardson was involved, Richardson's backpack dropped from his body to the ground. The officer and Richardson reached for the backpack simultaneously; the officer picked it up before Richardson could do so. Richardson then ran from the scene. Soon afterwards, the officer opened the backpack. Among its contents were a firearm, three cell phones, and Richardson's school ID card. Further investigation established that one of the phones in Richardson's backpack had been stolen in a robbery three days earlier. The police connected one of the other phones in the backpack to the perpetrators of that robbery, after which they obtained a warrant to search that cell phone. The warrant authorized the officers to search for "[a]ll information, text messages, emails, phone calls (incoming and outgoing), pictures, videos, cellular site locations for phone calls, data and/or applications, geo-tagging metadata, contacts, emails, voicemails, oral and/or written communication and any other data stored or maintained inside of [the phone]."

After he was charged in the Circuit Court for Prince George's County with armed robbery and other offenses, Richardson moved to suppress the fruits of the warrantless search of his backpack and of the warranted search of the cell phone. The circuit court denied Richardson's suppression motion as to both searches, and Richardson entered a

---

[4] U.S. CONST. amend. IV.

conditional guilty plea under which he preserved his right to appeal the circuit court's adverse suppression rulings. The Court of Special Appeals affirmed the circuit court's denial of Richardson's suppression motion.

As discussed below, the warrantless search of Richardson's backpack was permissible because Richardson abandoned the backpack before the officer searched it. With respect to the search of the cell phone, we conclude that the warrant failed to comply with the particularity requirement of the Fourth Amendment because it authorized investigators to search everything on the phone. However, based on the detailed information about the specific crime under investigation that was contained in the affidavit submitted as part of the application for the search warrant, which was incorporated into the warrant itself, we conclude that the officers reasonably relied on the warrant in executing the search of the cell phone. Thus, the good faith exception to the exclusionary rule applies to the fruits of the cell phone search. For this reason, we affirm the judgment of the Court of Special Appeals.

# I

## Background

### A. The Search of the Backpack

On September 28, 2018, a large fight broke out behind Crossland High School in Temple Hills, Maryland. Corporal Myron Young of the Prince George's County Police Department, who served as a school resource officer at Crossland, responded to a call about the fight. When he arrived on the scene, Corporal Young saw approximately 30 students engaged in the melee. A young man later identified as Richardson was "throwing punches"

3

with other students when Corporal Young intervened. Corporal Young was familiar with most of the students at Crossland High School, but he did not recognize Richardson, who, it turned out, attended a different high school.

Corporal Young grabbed another young man who was trying to punch Richardson from behind, effectively ending the fisticuffs in which Richardson specifically was involved. As Richardson got up from the ground, a backpack strapped across his body fell to the ground. Richardson and Corporal Young reached for the backpack at the same time, but it was Corporal Young who picked it up. Corporal Young thought it was suspicious that Richardson tried to grab the bag, instead of focusing on the other young men who were still fighting nearby. After Corporal Young picked up the bag, Richardson immediately fled the scene at "full speed." Had Richardson not fled, Corporal Young would have detained him, as well as the other person with whom Richardson had been fighting.

When Corporal Young picked up the backpack, he noticed that the "bag had a decent amount of weight to it," and he "suspected that there was most likely a weapon in the bag." Within one or two minutes of his picking up the bag and Richardson's flight, Corporal Young opened the backpack. He did not pat the backpack down before opening it. In the backpack, Corporal Young saw a silver and gray Smith & Wesson semiautomatic handgun. He also found an identification card for Richardson associated with a different school, three cell phones, and some cash, among other items. Based on his review of Richardson's school ID card, Corporal Young was able to positively identify Richardson as the person he saw drop the backpack and flee.

4

**B. The Police Connect Richardson to an Armed Robbery.**

One of the cell phones found in Richardson's backpack was a Rose Gold iPhone 8+ that subsequently was determined to have been stolen from Jonathan James-Parks in an armed robbery in District Heights, Maryland, on September 25, 2018. James-Parks had arranged to buy a PlayStation 4 from a seller on the mobile marketplace application "letgo." When he arrived at a pre-arranged meeting point to complete the purchase, a man asked James-Parks if he was "Jonathan." When James-Parks said he was, another individual came out from a concealed location wearing a mask, pointed a handgun at James-Parks, and demanded that James-Parks hand over his property. James-Parks gave the robber his iPhone and his wallet containing approximately $140 in cash, debit cards, and other items. The two assailants fled the scene, and James-Parks reported the robbery to police. James-Parks gave police the letgo account information for the person who had agreed to sell him the PlayStation 4.

One of the other phones in Richardson's backpack was a T-Mobile Space Gray iPhone SE with an International Mobile Equipment Identity ("IMEI"[5]) number of 356600080434043 (the "T-Mobile iPhone SE"). Police sent a message to the letgo account that the purported seller of the PlayStation 4 had used to communicate with James-Parks.

---

[5] Regarding an IMEI number, one wireless carrier advises customers: "Think of [the IMEI number] as your phone's fingerprint – it's a 15-digit number unique to each device. Phone carriers and manufacturers share IMEI numbers to enable tracking of smartphones that may be stolen or compromised." *What to Understand About IMEI Numbers*, Verizon Wireless, Aug. 25, 2021, available at https://perma.cc/HN7B-UW98.

5

The T-Mobile iPhone SE then produced an alert that it had received a message via the letgo application.

### C. The Warrant to Search the T-Mobile iPhone SE

On October 12, 2018, Detective M. Lembo[6] of the Prince George's County Police Department applied for a warrant to search the T-Mobile iPhone SE. In the section of Detective Lembo's supporting affidavit titled "PROBABLE CAUSE (FACTUAL BASIS)," Detective Lembo included the information described above about the armed robbery of James-Parks on September 25. Detective Lembo also provided an account of the fight at Crossland involving Richardson on September 28, as well as Corporal Young's recovery of the backpack and the handgun and cell phones that were in it, including the Rose Gold iPhone 8+ and the T-Mobile iPhone SE.

Detective Lembo further wrote in the affidavit that, "[w]hile in possession of the **T-Mobile Space Gray iPhone SE IMEI: 356600080434043** a message was sent to the suspect LetGo account by [another detective]. The **T-Mobile Space Gray iPhone SE IMEI: 356600080434043** then produced an alert that it had just received a message via the LetGo application." Detective Lembo continued:

> This Detective believes that the **T-Mobile Space Gray iPhone SE IMEI: 356600080434043** could contain text messages, emails, phone calls (incoming and outgoing), pictures, videos, cellular site locations for phone calls, data and/or applications, geo-tagging metadata, contacts, emails,

---

[6] Only the first letter of Detective Lembo's first name is included in the warrant materials.

voicemails, oral and/or written communication and any other data stored within the cell phone that are related to the [crime[7]].

In the section of the affidavit entitled "JUSTIFICATION FOR THE PLACE TO BE SEARCHED AND ITEMS TO BE SEIZED," Detective Lembo wrote:

Your affiant knows that when crimes are committed by more than one person, the individuals committing the crime communicate in advance to plan the crime. When cellular phones are used, certain information is generated and stored in the cellular phone, including call records, text messages, video messages, and picture messages. Furthermore, the call records can created [sic] connections between co-conspirators by showing the contact and communication they have leading up to the crime. Finally, the contact lists maintained in the phone can show a connection between the phone number whose records are being analyzed and a suspects [sic] being investigated.

Next, in the "DESCRIPTION OF THE ITEMS TO BE SEIZED," Detective Lembo sought approval to seize "[a]ll information, data, photographs, videos, detail logs, contact

---

[7] Detective Lembo included an apparent typographical error at this point in the affidavit. Detective Lembo referred to the crime as "carjacking," but there was no carjacking mentioned in the affidavit. Rather, Detective Lembo only described the armed robbery of Jonathan James-Parks. In describing his duties elsewhere in the affidavit, Detective Lembo stated that he "investigates citizen armed robberies, shootings, and carjacking." A plausible explanation for this error in identifying the crime under investigation as carjacking is that Detective Lembo drafted the affidavit for this search warrant using an earlier affidavit involving a carjacking as a template, and inadvertently retained a reference to "carjacking" in this affidavit. It appears Detective Lembo made a similar error earlier in the affidavit when writing that there was probable cause to believe that "there is property subject to seizure under the laws of this State and more particularly in violation of Annotated Code of Maryland Section CR-3.405(b)1." Section 3-405(b) of the Criminal Law Article prohibits carjacking.

Richardson did not argue in the circuit court, nor has he argued on appeal, that the erroneous references to carjacking in the affidavit rendered the search warrant defective or otherwise provide any basis for suppression of the evidence obtained in the search of the T-Mobile iPhone SE.

lists, and call histories maintained inside of **T-Mobile Space Gray iPhone SE IMEI: 356600080434043**[.]" (Line break omitted.)

A Judge of the Circuit Court for Prince George's County noted that the affidavit was subscribed and sworn in his presence on October 12, 2018. On the same date, the same Judge signed a search warrant directed to Detective Lembo stating:

> Upon reviewing the Application and the accompanying Affidavit of Detective M. Lembo #3821, Prince George's County Police Department, which is incorporated into this Warrant, I find there exists probable cause to issue this Search and Seizure Warrant. You are therefore commanded with the necessary and proper assistants to search forthwith the following place, person, and/or motor vehicle and seize the following specified items:
>
> 1. You shall conduct a search on the place, person, and/or motor vehicle located at:
>
> **T-Mobile Space Gray iPhone SE IMEI: 356600080434043**
>
> You shall seize the following items, evidence, and/or contraband:
>
> All information, text messages, emails, phone calls (incoming and outgoing), pictures, videos, cellular site locations for phone calls, data and/or applications, geo-tagging metadata, contacts, emails, voicemails, oral and/or written communication and any other data stored or maintained inside of **T-Mobile Space Gray iPhone SE IMEI: 356600080434043.**

The warrant further instructed the officers:

> Upon execution of this Warrant, you shall leave an inventory of the items seized, together with a copy of this Warrant, Application, and supporting Affidavit (unless previously sealed by court order) with the person from whom the items are seized, or with the person in charge of the premises, or if neither of those persons is present, then in a conspicuous place on the premises.

### D. Additional Investigation

Police obtained documents from letgo, which indicated that the letgo account associated with the purported seller of the PlayStation 4 was registered to Malicai Hezekiah Grant. James-Park subsequently identified Grant as the person who asked him if he was Jonathan, prior to the masked assailant threatening him with a handgun and demanding that he hand over his property. James-Park also identified the Rose Gold iPhone 8+ found in Richardson's backpack as his own, and told the police that the handgun found in Richardson's backpack looked like the one that was used to rob him.

The search of the T-Mobile iPhone SE revealed text messages between Richardson and Grant discussing and planning robberies through use of the letgo app. Police extracted approximately 6,000 pages of material from the T-Mobile iPhone SE.

On December 20, 2018, Richardson was indicted in the Circuit Court for Prince George's County on charges of armed robbery with a dangerous weapon, assault in the first degree, use of a firearm in the commission of a felony, possession of a regulated firearm by a person under 21, and related offenses.

### E. The Suppression Hearing and Conditional Guilty Plea

Richardson moved to suppress evidence discovered in the warrantless search of the backpack and in the warranted search of the T-Mobile iPhone SE. At the motions hearing, Richardson argued that the warrant to search the cell phone constituted a forbidden general warrant because it permitted police to search and seize "any and all information" and "any and all data." He also argued that the good faith exception to the exclusionary rule was inapplicable because "the warrant is so lacking [in] particularity that [an] officer would not

9

be able [to] reasonably rely on it[.]" The State argued that the warrant was valid under the Fourth Amendment.

The State then called Corporal Young as a witness. Corporal Young testified about the fight at Crossland and Richardson's immediate flight from the scene after Corporal Young picked up the backpack. Richardson did not call any witnesses. Richardson's attorney argued that Corporal Young unlawfully searched the backpack, and that Richardson did not abandon it when he ran away.

The circuit court credited Corporal Young's testimony and denied Richardson's motion. The court ruled that Corporal Young lawfully searched the backpack, and, alternatively, that Richardson abandoned the backpack when he ran away. The court also denied Richardson's motion to suppress the fruits of the cell phone search, rejecting Richardson's argument about the "alleged defect in the [search] warrant."

On September 18, 2019, Richardson entered a conditional guilty plea to conspiracy to commit robbery and wearing, carrying, and transporting a handgun. Richardson preserved his right to appeal the circuit court's denial of his suppression motion. The court subsequently sentenced Richardson to four years of imprisonment, all but one year suspended (to serve on home detention), on the conspiracy count. The court sentenced Richardson to three years on the handgun charge, all suspended, consecutive to the sentence on the conspiracy count.

## F. Appeal

The Court of Special Appeals affirmed the circuit court's denial of Richardson's motion to suppress. *Richardson v. State*, 252 Md. App. 363 (2021). The court held that

Richardson abandoned the backpack, as Richardson did not retain "any reasonable expectation of privacy in the backpack" when he fled the area. *Id.* at 383. Thus, the court held, the warrantless search of the backpack did not violate the Fourth Amendment. *See id.* Having held that the Fourth Amendment did not apply to the search of the backpack because Richardson had abandoned it, the Court of Special Appeals did not address Richardson's arguments concerning Corporal Young's alleged lack of reasonable suspicion to search the backpack.

Regarding the cell phone search warrant, the Court of Special Appeals opined that the warrant met the particularity requirement of the Fourth Amendment, based on the court's conclusion that "the detailed, particularized facts provided in the application and affidavit were incorporated into the search warrant[.]" *Id.* at 390. The intermediate appellate court also held that, even if the search warrant did not pass Fourth Amendment muster, the good faith exception to the exclusionary rule applied because "the application and affidavit as incorporated into the search warrant issued by the court contained sufficient particularized facts for an officer to objectively and in good faith rely on the finding of probable cause by a detached, neutral magistrate." *Id.* at 392.

On October 4, 2021, Richardson filed a petition for a writ of *certiorari*, seeking review of the following questions, which we rephrase slightly:

    1.    Did the motions court improperly deny the motion to suppress the fruits of the warrantless search of Richardson's backpack?

          a.    Where an officer picked up Richardson's bag and searched it immediately after the bag fell off Richardson's person and Richardson reached to reclaim it, did the Court of Special Appeals err in ruling that Richardson abandoned the bag

11

because, when the officer reached for the bag at the same time and picked it up first, Richardson ran away?

      b. Assuming that the bag was not abandoned, did the motions court err in ruling that the search of the bag was lawful where the officer failed to articulate an objectively reasonable basis for believing Richardson was armed and dangerous?

      c. Assuming there was reasonable suspicion to believe that Richardson was armed and dangerous, did the officer impermissibly open the backpack without patting it down first, where, *inter alia*, the officer insufficiently explained why he skipped a pat-down, and the State did not introduce the backpack itself (or a photograph of it)?

2. Did the motions court improperly deny the motion to suppress the fruits of the search of the T-Mobile iPhone SE found inside the backpack?

      a. Despite being conducted pursuant to a warrant, did the search of the cell phone violate the particularity requirement of the Fourth Amendment because, in relevant part, the warrant authorized the search and seizure of "[a]ll information … and any other data stored or maintained inside" the phone?

      b. Did the Court of Special Appeals err in concluding that the warrant for the phone satisfied the particularity requirement because it incorporated the search warrant application and accompanying affidavit in support of it?

      c. Did the Court of Special Appeals err in concluding that even if the warrant was defective, the fruits of the search of the phone were still admissible under the good-faith doctrine?

On November 10, 2021, we granted the petition. *Richardson v. State*, 476 Md. 418 (2021).

## II

## Standard of Review

The validity of a suppression ruling is a mixed question of law and fact. *State v. Carter*, 472 Md. 36, 54 (2021). This Court's review of a circuit court's denial of a motion to suppress evidence is "limited to the record developed at the suppression hearing." *Pacheco v. State*, 465 Md. 311, 319 (2019) (internal quotation marks and citation omitted). We assess the record "in the light most favorable to the party who prevails on the issue that the defendant raises in the motion to suppress." *Norman v. State*, 452 Md. 373, 386 (2017). We accept the trial court's factual findings unless they are clearly erroneous. *Carter*, 472 Md. at 54-55. "The ultimate determination of whether there was a constitutional violation, however, is an independent constitutional evaluation that is made by the appellate court alone, applying the law to the facts found in each particular case." *Id.* at 55 (internal quotation marks and citation omitted). We review any questions of law *de novo*, without any special deference to the views of the lower courts. *Id.*

## III

## Discussion

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The Fourth Amendment also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.*

The Supreme Court has often said that "'the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. at 381-82 (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "It remains a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment − subject only to a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991) (internal quotation marks and citations omitted).

Evidence obtained in violation of the Fourth Amendment will ordinarily be inadmissible under the exclusionary rule. *Thornton v. State*, 465 Md. 122, 140 (2019). However, the "significant costs" of the exclusionary rule have led the Supreme Court to deem it "applicable only ... where its deterrence benefits outweigh its substantial social costs." *Carter*, 472 Md. at 55-56 (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)). The Supreme Court has recognized several exceptions to the exclusionary rule, including the good faith doctrine. *See United States v. Leon*, 468 U.S. 897 (1984). Under the good faith exception, evidence will not be suppressed under the exclusionary rule if the officers who obtained it acted in objectively reasonable reliance on a search warrant. *Id.* at 922-24.

### A. The Warrantless Search of Richardson's Backpack

Fourth Amendment protection from a warrantless search does not extend to property that has been abandoned by its owner. *Stanberry v. State*, 343 Md. 720, 731 (1996) (citations omitted). "By abandoning property, the owner relinquishes the legitimate expectation of privacy that triggers Fourth Amendment protection." *Id.* In assessing whether property has been abandoned, "[f]irst, we ask whether the individual, by his

conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private." *Bond v. United States*, 529 U.S. 334, 338 (2000) (cleaned up). And "[s]econd, we inquire whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *Id.* (cleaned up).

The test for abandonment of property in a search and seizure context under the Fourth Amendment is distinct from the property law concept of abandonment. 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.6(b) (6th ed. 2020, Dec. 2021 update) (citations omitted). In the law of property, "the question is whether the owner has … relinquished his interest in the property so that another, having acquired possession, may successfully assert his superior interest." *Id.* However, "[i]n the law of search and seizure … the question is whether the defendant has, in discarding the property, relinquished his reasonable expectation of privacy so that its seizure and search is reasonable within the limits of the Fourth Amendment." *Id.* (citation omitted). Thus, a person can retain a property interest in an item but at the same time relinquish their reasonable expectation of privacy in it. *Id.*

"Although the Fourth Amendment abandonment inquiry focuses on the property owner's actual expectation of privacy, a subjective question, courts must frequently rely on objective indications of the owner's intent." *Stanberry*, 343 Md. at 732; *see also United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000) ("Because this is an objective test, it does not matter whether the defendant harbors a desire to later reclaim an item; we look solely to the external manifestations of his intent as judged by a reasonable person possessing the same knowledge available to the government agents."). A property owner's

"intent may be inferred from words spoken, acts done, and other objective facts…. All relevant circumstances existing at the time of the alleged abandonment should be considered." *Duncan v. State*, 281 Md. 247, 265 (1977) (citation omitted). In *Stanberry*, this Court enumerated several specific considerations for determining whether property was abandoned, including: 1) "the location of the property and … whether the area is secured"; and 2) "whether the owner requested a third party to watch or protect the property." 343 Md. at 733.

In this case, the objective facts indicate that Richardson intended to relinquish his privacy interest in the backpack when he fled the scene. After Corporal Young picked up the backpack, Richardson did not say anything to Corporal Young. He did not ask Corporal Young to hold on to the backpack for him until things calmed down in the area. He did not say he had to go, but would be back in a few minutes. He did not ask Corporal Young why he had picked up the backpack. He did not say, "That's mine, please give it back to me." Richardson did none of those things, nor did he say or do anything else after Corporal Young picked up the backpack to suggest that he intended to return to the scene and retrieve the backpack at a later time. Rather, as soon as he saw that Corporal Young had the backpack, Richardson ran off at "full speed." Richardson knew he had not left the backpack in a secure location or in the care of a person who understood that he intended to return for it later.[8] At that point, in light of what had just transpired, Richardson reasonably

---

[8] On this point, *compare United States v. Most*, 876 F.2d 191, 192, 196-97 (D.C. Cir. 1989) (defendant did not abandon his bag, where he left it with store clerk after asking her to hold it for him before he left), *with United States v. Nowak*, 825 F.3d 946, 948-49 (8th Cir. 2016) (defendant held to have abandoned his backpack in the passenger seat of

16

understood that someone would look through the backpack, if for no other reason than to try to determine to whom it and its contents belonged.

It is true that, before Corporal Young picked up the backpack, Richardson indicated that he wanted to retain possession of the backpack – and his expectation of privacy in its contents – by reaching for it. Based on this circumstance, Richardson contrasts this case with other abandonment cases in which individuals, upon seeing police, discarded objects while fleeing.

This is a distinction without a difference. Richardson's initial expression of intent to maintain his privacy interest in the backpack did not set that intent in stone. Richardson's subsequent flight showed that he changed his mind. *See Hawley v. Commonwealth*, 144 S.E.2d 314, 315-17 (Va. 1965) (holding that the defendant abandoned his car in a motel parking lot when, after telling the manager that he would return in three or four days, the defendant did not do so and the car was still there when police were summoned more than a week later). A person's intent to maintain their expectation of privacy in an object can change in a matter of days, as apparently was the case in *Hawley*, or in a few seconds, as occurred here.

Richardson also attempts to distinguish this case from other abandonment-by-flight cases on the basis that, here, the flight followed a thwarted attempt to retain his property.[9]

---

his friend's car when he fled the car following a traffic stop, and where he did not ask the friend to store or safeguard the backpack for him, but instead said nothing at all, "leaving the backpack behind and leaving [the friend] 'amazed' at [his] flight").

[9] In the trial court and before us, Richardson has conceded that Corporal Young did not unlawfully seize the backpack merely by picking it up from the ground. Nor do we

But this distinction, too, is immaterial. When someone sees a police officer, runs off, and discards an object while on the move, it is clear that the person, until the moment of discarding, manifested an intent to maintain their expectation of privacy in the object. The fact that Richardson manifested his pre-flight intent by reaching for his backpack, rather than by maintaining continuous possession of the backpack, is of no moment.[10]

In sum, despite Richardson's initial reach for his backpack after it fell, we hold that Richardson relinquished all reasonable expectation of privacy in the backpack when he fled the scene. It follows that Richardson abandoned his backpack before Corporal Young searched it, and that the circuit court correctly denied Richardson's motion to suppress evidence based on the warrantless search of the backpack.[11]

---

perceive, based on the record established at the motions hearing, that Corporal Young "meaningfully interfered" with Richardson's possessory interest in the backpack merely by picking it up. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also United States v. Va Lerie*, 424 F.3d 694, 706 (8th Cir. 2005) ("Because seizure is defined as some meaningful interference with an individual's possessory interests in his property, not all police interference with an individual's property constitutes a Fourth Amendment seizure, i.e., the police do not seize property every time they handle private property."). At the moment he picked up the bag, Corporal Young did not objectively indicate to Richardson that he (Corporal Young) intended to retain the backpack. By not asking Corporal Young to return the backpack and instead immediately fleeing, Richardson forewent the opportunity to learn what Corporal Young would have done with the backpack if Richardson had asked him to return it.

[10] Richardson also notes that he fled only after being assaulted and while other fights were still in progress nearby. To the extent he argues that this circumstance undermines the trial court's finding that he abandoned the backpack, we disagree. Corporal Young came to Richardson's defense upon his arrival at the scene, after which the fighting in Richardson's immediate area "pretty much stopped." If Richardson was concerned about his safety, he could have remained with Corporal Young until all fighting came to an end.

[11] Because Richardson abandoned the backpack, Corporal Young's subsequent search of the backpack did not implicate the Fourth Amendment. Accordingly, like the

18

**B. The Cell Phone Search Warrant**

1. <u>The Search Warrant Did Not Comply with the Fourth Amendment's Particularity Requirement.</u>

To comply with the Fourth Amendment, a search warrant: (1) must be based on probable cause; (2) must be supported by oath or affirmation; and (3) must describe with particularity "the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The search warrant that the officers executed on the T-Mobile iPhone SE complied with the first two of these requirements: it was based on probable cause, and it was supported by a sworn affidavit. However, it failed the particularity requirement.

*a. The Particularity Requirement*

The particularity requirement of the Fourth Amendment protects against general and overbroad warrants that leave the scope of the search to the discretion of law enforcement. *See, e.g.*, *State v. Jennings*, 942 N.W.2d 753, 768 (Neb. 2020); *see also Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The manifest purpose of [the] particularity requirement was to prevent general searches"; this "requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."); *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (particularity requirement prohibits police from "indiscriminate[ly] rummaging through citizens' personal effects").

Court of Special Appeals, we will not address Richardson's other contentions concerning the search of the backpack.

19

As alluded to at the outset of this opinion, the emergence of the modern cell phone as an omnipresent aspect of American life has presented challenges for the application of the Fourth Amendment that were previously unknown:

> Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.
>
> One of the most notable distinguishing features of modern cell phones is their immense storage capacity. Before cell phones, a search of a person was limited by physical realities and tended as a general matter to constitute only a narrow intrusion on privacy…. Most people cannot lug around every piece of mail they have received for the past several months, every picture they have taken, or every book or article they have read – nor would they have any reason to attempt to do so.

*Riley v. California*, 573 U.S. at 393-94. The Court observed that the storage capacity of cell phones and the "apps" that provide "tools for managing detailed information about all aspects of a person's life," combined with the pervasiveness of cell phones in American society, made it "no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives – from the mundane to the intimate." *Id.* at 395. These considerations, among others, led the Supreme Court to hold in *Riley* that imposing the requirement to obtain a warrant before searching a cell phone incident to arrest was necessary as a "meaningful constraint," *id.* at 399, on the power of law enforcement officers to intrude on the "privacies of life" for many Americans. *Id.* at 403 (internal quotation marks and citation omitted).

"Vigilance in enforcing the probable cause and particularity requirements is …

essential to the protection of the vital privacy interests inherent in virtually every modern

cell phone and to the achievement of the 'meaningful constraints' contemplated in *Riley*."

*Burns v. United States*, 235 A.3d 758, 773-74 (D.C. 2020) (quoting *Riley*, 573 U.S. at 399).

Courts are "obligated – as 'subtler and more far-reaching means of invading privacy have

become available to the Government' – to ensure that the 'progress of science' does not

erode Fourth Amendment protections." *Carpenter v. United States*, 138 S. Ct. 2206, 2223

(2018) (quoting *Olmstead v. United States*, 277 U.S. 438, 473-74 (1928) (Brandeis, J.,

dissenting)).

The particularity requirement is usually not difficult to apply in the "physical

world." *See* Adam M. Gershowitz, *The Post-Riley Search Warrant: Search Protocols and

Particularity in Cell Phone Searches*, 69 VAND. L. REV. 585, 598 (2016) ("Gershowitz").

For example, if police officers apply for a search warrant based on testimony from an

informant that a suspect is involved in drug trafficking without specifying the location

where the illegal activity is occurring, a judge should not automatically issue warrants for

the suspect's home, office, car, and person. *See id.* ("Absent some limitation curtailing the

officers' discretion when executing the warrant, the safeguard of having a [judicial officer]

determine the scope of the search is lost.") (citing *George*, 975 F.2d at 76). Instead, in that

situation, the judge "should demand more information about where the narcotics are likely

to be found so that the search warrant can be tailored to a particular location where there is

probable cause to believe narcotics will be located." *Id.*

The particularity requirement is arguably of even greater importance in the context of computers and smartphones than it is in the physical world, given the ability of smartphones to store "millions of pages of text, thousands of pictures, or hundreds of videos," *Riley*, 573 U.S. at 394, and of computers to store much more still. *See United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) ("The modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important."). Without understating the problem posed by a general warrant to search someone's home prior to the digital age, a general warrant to search a computer or a smartphone today magnifies that problem exponentially.

Yet, it has proven to be more challenging for law enforcement agencies and courts to apply the particularity requirement in the digital world than in the physical world. As electronic data can be hidden in multiple formats and places in a cell phone, or on a computer, it can be difficult for officers to specify in advance the sections of the device that should be searched. *See* Gershowitz at 599. And issuing judges have sometimes been caught between a rock and a hard place, attempting to ensure the particularity that the Fourth Amendment requires without unduly hampering law enforcement officers from obtaining the evidence that the affiant has shown is probably located somewhere in a cell phone or another electronic device. In recent years, issuing judges around the country have attempted to strike the proper balance by including reasonable restrictions on officers' authority to search cell phones and other electronic devices. Those restrictions have varied

22

depending on the facts and circumstances of the specific cases before the issuing judges. They have included the following:

       *i.     Restricting "How": Search Protocols*

Some issuing judges have denied law enforcement's requests for cell phone search warrants where agents did not provide a search protocol or provided one that was too general. *See* Gershowitz at 617-18. In *In re Cellular Telephones*, No. 14-MJ-8017-DJW, 2014 WL 7793690 (D. Kan. Dec. 30, 2014), United States Magistrate Judge David J. Waxse declined to issue a warrant authorizing agents to search cell phones in the custody of the U.S. Drug Enforcement Administration for "any names, addresses, telephone numbers, text messages, digital images, video depictions, or other identification data or communications that are evidence of [certain drug crimes]" without including a search warrant protocol that appropriately limited how the agents could search for such items. *Id.* at *1. Judge Waxse stated that

> [t]he government must provide the court with as specific a description of the place to be searched and the things to be seized as the circumstances reasonably allow. Failure to do so "offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary." [Electronically stored information], by its nature, makes this task a complicated one. Regarding the place to be searched, … in the digital universe, particular information is not accessed through corridors and drawers, but through commands and queries. As a result, in many cases, the only feasible way to specify a particular 'region' of the [device] will be by specifying how to search. Similarly, in attempting to describe the things to be seized, often the way to specify particular objects or spaces will not be by describing their physical coordinates but by describing how to locate them. By providing a search protocol explaining how it will separate what is permitted to be seized from what is not, the government can more easily and satisfactorily explain to the court how it will decide where it is going to search.

*Id.* at *8 (footnotes and citations omitted). Judge Waxse advised that, when the government provides a proposed search protocol, it "should not compromise the thoroughness of its description by trying to avoid the use of technical language. In fact, the court *wants* a sophisticated technical explanation of how the government intends to conduct the search[.]" *Id.* (internal quotation marks and citations omitted). Judge Waxse denied the government's application for a search warrant without prejudice to resubmission "once it includes a search protocol that addresses the [court's] concerns." *Id.* at *11.

United States Magistrate Judge John M. Facciola similarly denied without prejudice an application to search an iPhone where the government did not provide a proposed search protocol. *Matter of the Search of Apple iPhone IMEI 013888803738427*, 31 F. Supp. 3d 159, 169 (D.D.C. 2014). Judge Facciola stated that "a sufficient search protocol, *i.e.* an explanation of the scientific methodology the government will use to separate what is permitted to be seized from what is not, will explain to the Court how the government will decide where it is going to search – and it is thus squarely aimed at satisfying the particularity requirement of the Fourth Amendment." *Id.* at 166. In providing guidance to the government about what would satisfy the Fourth Amendment, Judge Facciola explained:

> [T]his Court is not requiring a search protocol so that it may specify how the warrant is to be executed. Instead, the protocol will explain to the Court how the government intends to determine where it will search (which "parts" – or blocks – of the iPhone's … flash drive) and how those decisions with respect to how the search will be conducted will help limit the possibility that locations containing data outside the scope of the warrant will be searched…. Instead of identifying [which] specific blocks of the iPhone's flash drive will be searched ahead of time – which would be impossible – the Court is instead asking the government to explain its methodology for determining, once it is

engaged in the search, how it will determine which blocks should be searched for data within the scope of the warrant…. This is a subtle but … constitutionally significant distinction.

*Id.* at 167 (footnotes and citations omitted). Judge Facciola further explained that the general information he had previously received from the government concerning its search methods – that "it uses 'keyword searches for related terms' and 'computer-assisted scans[]'" – while "a useful step in the right direction, … still do[es] not actually give the Court a *search protocol* as the Court has defined the term." *Id.* at 168. In Judge Facciola's view, "the government's statement that it will use a 'computer-assisted scan' is equivalent to saying, … that it will seize 'all records' relevant to a particular crime. It tells the Court nothing about what will actually happen and does not provide a means of searching so that this Court is assured that it is the type of particularized search that the Fourth Amendment demands." *Id.*

Judge Facciola continued:

The government need only tell the Court what it already intends to do and what it does in every other similar search of an iPhone. The government should not be afraid to use terms like "MD5 hash values," "metadata," "registry," "write blocking" and "status marker," nor should it shy away from explaining what kinds of third party software are used and how they are used to search for particular types of data. The Court is *not* dictating that particular terms or search methods should be used. Instead, the Court is attempting to convey that it wants a sophisticated technical explanation of how the government intends to conduct the search so that the Court may conclude that the government is making a genuine effort to limit itself to a particularized search.

*Id.* Finally, Judge Facciola explained why requiring a search protocol should not make the government concerned that it is forever limiting its ability to search more deeply in the phone:

Any concerns about being locked into a particular search protocol are unnecessary for two reasons. First, the government can always return for additional authorization of this Court as needed. Second, the application need only explain that some searches require additional techniques and that what is proposed is merely what the government intends to do at the time it submits its application, based on its experience searching such devices and in light of the particular data it seeks to seize.

*Id*. (emphasis deleted).[12]

We do not suggest that judges who issue cell phone search warrants in Maryland must follow the practices of Judges Waxse and Facciola in any particular case. However, we find the observations of those judges concerning search protocols to be useful, and we recommend that issuing judges in Maryland consider including search protocols in cell phone search warrants in appropriate cases. To the extent issuing judges opt to include search protocols in cell phone warrants, it will be up to them, in the first instance, to decide how best to balance the Fourth Amendment's particularity requirement with law enforcement's need to search a cell phone for evidence of a crime, in crafting the search

---

[12] Some courts have been reluctant to require search protocols specifying how search warrants for electronic devices should be executed. *See, e.g.*, *United States v. Garcia-Alvarez*, No. 14-cr-0621, 2015 WL 777411, at \*5 (S.D. Cal. Feb. 24, 2015) (concluding that cell phone search warrant was sufficiently particular; "[a]lthough it may have been better if the warrant had included a search protocol that minimized unnecessary intrusion into Defendant's personal data," precedent did not require such protocols); *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005) ("This court has never required warrants to contain a particularized computer search strategy."); *United States v. Upham*, 168 F.3d 532, 537 (1st Cir. 1999) ("The warrant process is primarily concerned with identifying what may be searched or seized – not how – and whether there is sufficient cause for the invasion of privacy thus entailed."); *United States v. Lustyik*, 57 F. Supp. 3d 213, 229 (S.D.N.Y. 2014) (noting in computer and cell phone search case that the Second Circuit does not require search protocols).

protocol. We expect that law enforcement officers who apply for cell phone search warrants will suggest specific search protocols in appropriate cases.

      *ii.     Restricting "Where, What, and When": Limiting the Search to Specific Areas or Content in a Cell Phone, or for Specific Time Frames*

In some cases, rather than requiring search protocols, which restrict how law enforcement officers search a cell phone, issuing judges may decide to impose limits on where the officers may search in the phone, or on what specifically they may look for, and for which time period(s). *See* Gershowitz at 629 *et seq.*; *State v. Fairly*, 457 P.3d 1150, 1154 (Wash. Ct. App. 2020). For example, if there is probable cause to believe that evidence of a crime will be found in text messages, but not in photos, videos, or any other applications on a particular phone, then the issuing judge reasonably may limit the search warrant to the text messaging applications found on the phone, rather than authorize the officers to access the entire phone. *See* Gershowitz at 633. When the officers know the specific type of evidence they are looking for, and where the evidence is stored on a cell phone, the issuing judge may well decide to limit the officers' search to those locations in order to comply with the particularity requirement. *See, e.g.*, *In re Nextel Cellular Telephone*, No 14-MJ-8005, 2014 WL 2898262, at *13 (D. Kan. June 26, 2014) (observing that, "[j]ust as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe drug trafficking communication may be found in [a] phone's … mail application will not support the search of the phone's Angry Birds application"). Thus, we would expect that, in appropriate cases, issuing judges will limit searches of cell phones to specific applications

27

and/or types of applications that officers have reason to believe the suspect used in furtherance of the crimes under investigation. *See United States v. Winn*, 79 F. Supp. 3d 904, 919 (S.D. Ill. 2015) ("The major, overriding problem with the description of the object of the search – 'any or all files' – is that the police did not have probable cause to believe that *everything* on the phone was evidence of the crime of public indecency.").

In some cases, it may be sufficient to limit the officers to search for specific items on the phone. For example, if there is probable cause to believe that a suspect used a friend's phone to record a sex crime, the issuing judge reasonably could limit the search of that phone to the recording itself (in the absence of the affiant explaining why there was probable cause to believe that evidence of the crime would be contained in other items on the phone). That would presumably authorize a narrow search of any application on the phone that could have made or stored the recording.

Perhaps the most common limitation that issuing judges should consider including in a warrant to satisfy the particularity requirement is a temporal restriction. In this regard, *Commonwealth v. Snow*, 160 N.E.3d 277 (Mass. 2021), is instructive. In *Snow*, following a shooting, the police obtained a search warrant to search the defendant's cell phone for the following information:

> Cellular telephone number; electronic serial number, international mobile equipment identity, mobile equipment identifier or other similar identification number; address book; contact list; personal calendar, date book entries, and to-do lists; saved, opened, unopened, draft, sent, and deleted electronic mail; incoming, outgoing, draft, and deleted text messages and video messages; history of calls sent, received, and missed; any voicemail messages, including those that are opened, unopened, saved, or deleted; GPS information; mobile instant message chat logs, data and contact

28

information; internet browser history; and any and all of the fruits or instrumentalities of the crime of Murder.

*Id.* at 281-82. The detective asked for and received permission to search without any date restriction because "it was unknown 'when the weapon used was acquired and when any related conspiracy may have been formed.'" *Id.* at 282.

The Supreme Judicial Court of Massachusetts held that "the lack of time restriction rendered the warrant impermissibly broad," and remanded the case for a determination "whether the proffered evidence fell outside what would have been a reasonable temporal limit." *Id.* at 285. The court opined that "[t]he magnitude of the privacy invasion of a cell phone search utterly lacking in temporal limits cannot be overstated." *Id.* at 288. "Consequently, to be sufficiently particular, a warrant for a cell phone search presumptively must contain some temporal limit." *Id.* (citing *Winn*, 79 F. Supp. 3d at 921; *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 459 (S.D.N.Y. 2013)); *see also Moats v. State*, 455 Md. 682, 706 (2017) (Adkins, J., concurring) ("We should not condone a warrant authorizing police to search the entirety of a cell phone absent any temporal limitation on the information to be searched. A warrant of such generality raises the same concerns our Framers sought to address by crafting the Fourth Amendment."). The *Snow* Court also suggested that, given the privacy interests at stake in a cell phone search, "the temporal restriction in an initial search warrant for a cell phone should err on the side of narrowness," especially in light of the officers' ability to apply for a new warrant if, during the initial search, they "uncover information giving rise to probable cause to broaden their search of the cell phone." 160 N.E.3d at 288. The Court emphasized that "[d]etermining

29

the permissible parameters for a cell phone search is a fact-intensive inquiry and must be resolved based on the particular facts of each case." *Id.* (citation omitted).

### iii. The Use of Catchall Terms That Allow Officers to Seize All Data on a Cell Phone Is Generally Not Permitted.

Numerous courts have held that a search warrant that uses overbroad and/or "catchall" language effectively permitting the searching officers to seize all data on a cell phone or other electronic device is invalid. *See, e.g.*, *State v. Henderson*, 854 N.W.2d, 616, 625, 633 (Neb. 2014) (warrants to search cell phones violated particularity requirement where they authorized a search of "[a]ny and all information," as well as "any other information that can be gained from the internal components and/or memory Cards"); *State v. Allen*, 406 P.3d 89, 93 (Or. Ct. App. 2017) (holding that search warrant for cell phone failed the particularity requirement because it "placed no limitations on the types of files to be seized and examined"); *Otero,* 563 F.3d at 1132 (government conceded and reviewing court agreed that warrant "authorizing a search of 'any and all information and/or data' stored on computer" was "the sort of wide-ranging search that fails to satisfy the particularity requirement"); *United States v. Clough*, 246 F. Supp. 2d 84, 87 (D. Me. 2013) (warrant that authorized seizure of any and all text messages and digital images on computer was "clearly excessive" and was not sufficiently particularized); *United States v. Fleet Mgmt. Ltd.*, 521 F. Supp. 2d 436, 439 (E.D. Pa. 2007) (warrant to search hard drives of three computers on a vessel lacked particularity because it sought "[a]ny and all data in the computers or contained in the computer storage devices, including, but not limited to, software and all records including e-mail, photographs, and documents relating to the

ship's operation, engineering, maintenance, pollution control equipment, navigational charts, and crew"). We agree that, in general, such a warrant fails to comply with the particularity requirement.

> iv. *Broader Searches Can Be Permitted Where There Is Probable Cause to Believe That a Narrower Search Will Miss Hidden or Mislabeled Evidence.*

With respect to a small subset of cases, most notably child pornography and financial crimes, experience has shown that some perpetrators purposely mislabel electronic files or hide evidence in unusual places. Thus, a search warrant authorizing a broad forensic analysis of a cell phone can be appropriate where the warrant limits the search for evidence of one of these crimes (but an issuing court should consider requiring the inclusion of search protocols to restrict how the searching officers conduct such an analysis). *See* Gershowitz at 633.

We envision this exception as applying rarely. With respect to most cell phone search warrants, given the privacy interests at stake as explained in *Riley*, the particularity requirement is not satisfied by authorizing officers to search for any and all items that are evidence of a particular crime or crimes. *See, e.g.*, *Burns*, 235 A.3d at 774-75 (search warrant invalid for lack of particularity where it authorized officers to search for "all records" and "any evidence" on the phones related to violations of the first-degree murder statute; "[t]he warrants imposed no meaningful limitations as to how far back in time police could go or what applications they could review and, instead, endorsed the broadest possible search without regard to the facts of the case or the limited showings of probable cause set forth in the affidavits"). "Particularity" in the context of the Fourth Amendment

does not refer to the particular crime(s) under investigation; rather, it refers to the particular "place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

### v. *Summary*

There is no "one size fits all" solution for ensuring particularity in cell phone search warrants. In submitting and ruling upon every application for a cell phone search warrant, the affiant and the issuing judge must think about how to effectively limit the discretion of the searching officers so as not to intrude on the phone owner's privacy interests any more than reasonably necessary to locate the evidence for which there is probable cause to search. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley*, 573 U.S. at 381-82 (internal quotation marks and citation omitted). As discussed above, the affiant, in drafting the proposed warrant, and the issuing judge, in deciding what the warrant authorizes and requires, have a number of tools at their disposal. Among other things, affiants can suggest temporal restrictions as well as limitations on the applications that will be searched, with the understanding that they can later apply for a second, broader warrant if their initial search provides a basis to do so. Or the affiants can propose search protocols that will guide the agents in how to conduct their searches. If an issuing judge receives a proposed warrant that does not include any such suggested restrictions, the judge may require the affiant to add one or more of them in a revised warrant. Ultimately, the key point is that a search warrant for a cell phone must be specific enough so that the

officers will only search for the items that are related to the probable cause that justifies the search in the first place.[13]

### b. *The Warrant to Search the T-Mobile iPhone SE*

In the case before us, the search warrant that Detective Lembo obtained for the T-Mobile iPhone SE found in Richardson's backpack authorized officers to search and seize the following:

> *All information*, text messages, emails, phone calls (incoming and outgoing), pictures, videos, cellular site locations for phone calls, data and/or applications, geo-tagging metadata, contacts, emails, voicemails, oral and/or written communication *and any other data stored or maintained inside of T-Mobile Space Gray iPhone SE IMEI: 356600080434043*.

(Emphasis added.)

Richardson argues that, in authorizing the officers to search for "all information" and "any other data stored or maintained inside of" the phone, the warrant violated the Fourth Amendment's particularity requirement. We agree.

The State does not dispute that the phrases italicized above are examples of "catchall" language that courts have determined to be impermissibly broad. Indeed, the State does not attempt to defend the constitutionality of the warrant based only on its language. Rather, the State contends that the warrant incorporated Detective Lembo's

---

[13] We recognize that the judges who review applications for cell phone search warrants have varying degrees of understanding of how cell phones work, what the applications on a phone are capable of doing, etc. Accordingly, we recommend that the Judicial College of Maryland develop a training course to help educate judges on matters that will likely be relevant to the consideration of cell phone search warrant applications, including search protocols and other potential limitations on cell phone searches.

supporting affidavit and that, when read to include that affidavit, the warrant satisfies the particularity requirement of the Fourth Amendment.

We agree with those courts that have held that a court reviewing the validity of a search warrant "may construe [it] with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Groh*, 540 U.S. at 557-58 (summarizing federal appellate cases). The parties here dispute whether Detective Lembo's affidavit accompanying the search warrant was incorporated in the warrant. We agree with the State that the record provides sufficient evidence to conclude that the affidavit was so incorporated.

In approving the warrant, the issuing judge stated: "Upon reviewing the Application and the accompanying Affidavit of Detective M. Lembo #3821, Prince George's County Police Department, *which is incorporated into this Warrant*, I find there exists probable cause to issue this Search and Seizure Warrant." (Emphasis added.) The issuing judge further directed the officers: "Upon execution of this Warrant, you shall leave an inventory of the items seized, together with a copy of this Warrant, Application, *and supporting Affidavit* (unless previously sealed by court order) with the person from whom the items are seized[.]" (Emphasis added).[14]

It is clear from the plain language of the warrant that it incorporated Detective Lembo's supporting affidavit. In addition, a reasonable inference to draw from the record is that the warrant, application, and affidavit were maintained as a single package. Defense

_____

[14] There is no indication in the record that Detective Lembo's affidavit was ever sealed.

34

counsel was provided with all of these documents, and in fact, introduced them as a single exhibit at the suppression hearing. In addition, as the State notes (without dispute from Richardson), there is no indication in the record that police seized digital items that were not described in one of the specific categories outside of the "catchall" terms of the warrant and accompanying affidavit. Thus, we infer that the searching agents were given the affidavit (or were sufficiently apprised of its information verbally). If that had not been the case, they would not have known to look for the specific information about robberies using the letgo app that they discovered, and presumably they would have extracted reams of unrelated information that Richardson would have been able to point to as the product of a fishing expedition. For these reasons, we are able to conclude that Detective Lembo's affidavit was incorporated into the warrant for purposes of assessing the particularity of the warrant.

Regardless, the incorporation of the affidavit does not render this search warrant sufficiently particular under the Fourth Amendment.[15] As Richardson observes, the affidavit also included catchall language. In the section of the affidavit entitled "DESCRIPTION OF THE ITEMS TO BE SEIZED," Detective Lembo sought approval to seize "*[a]ll information, data*, photographs, videos, detail logs, contact lists, and call histories maintained inside of **T-Mobile Space Gray iPhone SE IMEI: 356600080434043**[.]" (Line break omitted; emphasis added.) Detective Lembo did not

---

[15] However, as discussed below, the information in the affidavit is central to our determination that the searching officers reasonably relied on the issuance of the warrant and, therefore, that the good faith exception to the exclusionary rule applies here.

include any temporal restrictions or any other limitations on the proposed search in the affidavit that he then inadvertently failed to include in the proposed warrant itself. Just as the warrant approved the search of everything on the cell phone, the affidavit asked for permission to search for everything on the cell phone. It is beyond dispute that the affidavit did not establish probable cause to search everything on the T-Mobile iPhone SE. With respect to the vast majority of cell phone search warrants, we agree with the view expressed by Judge Adkins in her concurring opinion in *Moats* that this Court "should not condone a warrant authorizing police to search the entirety of a cell phone absent any temporal limitation on the information to be searched" because "[a] warrant of such generality raises the same concerns our Framers sought to address by crafting the Fourth Amendment." *Moats*, 455 Md. at 706 (Adkins, J., concurring).[16]

In this case, there also should have been limitations placed on the applications that the officers were permitted to access when searching the phone. A warrant (with a

---

[16] Our endorsement of the views Judge Adkins expressed in her concurring opinion in *Moats* does not require us to overrule or otherwise limit *Moats*. The issues before the Court in *Moats* were: (1) does an individual's suspected involvement in a crime and a police officer's belief that a cell phone could be used in that crime, without more, constitute probable cause to seize and search that individual's cell phone; and (2) did the good faith exception to the exclusionary rule apply in Moats's case? *See Moats*, 455 Md. at 693. The Majority first held that the post-arrest retention of Moats's cell phone while officers applied for and obtained a search warrant was permissible. *Id.* at 696-98. With respect to the validity of the search warrant, particularity was not at issue. Rather, Moats claimed that the affiant did not establish probable cause to believe that evidence of a crime would be found on the phone. *See id.* at 698-99. The Majority concluded that the warrant was supported by probable cause, and did not reach the State's alternative argument concerning the good-faith exception. *See id.* at 686, 701-03. Judge Adkins, joined by the Honorable Clayton Greene, Jr., concurred in the judgment, concluding that the good faith exception to the exclusionary rule was applicable to the warrant at issue. *Id.* at 706 (Adkins, J., concurring).

36

reasonable temporal restriction) that limited the officers to searching the letgo application, as well as texting and other communication applications, call logs, and navigation/location data for evidence relating to the crime of robbery, would have been reasonable.

None of the State's contentions persuades us that this cell phone search warrant, as supplemented by the affidavit, complied with the particularity requirement of the Fourth Amendment.

First, the State asks to consider that some courts have upheld warrants authorizing expansive searches of cell phones. As an example, the State cites a Nebraska Supreme Court decision, *State v. Short*, 964 N.W. 2d 272 (Neb. 2021), *cert. denied*, 142 S. Ct. 1155 (2022). In that case, the Court disapproved of warrant language authorizing a search of "any and all" information when those terms were not linked to a specific crime, but permitted a cell phone warrant authorizing the search of wide swaths of available data where the warrant did not include such language. *Id*. at 316. The Court stated:

> The most important constraint in preventing unconstitutional exploratory rummaging is that the warrant limit the search to evidence of a specific crime, ordinarily within a specific time period, rather than allowing a fishing expedition for all criminal activity. We agree that a brief examination of all electronic data associated with a cell phone is usually necessary in order to find where the information to be seized is located, and such examination is reasonable under the Fourth Amendment.

*Id.* (footnote omitted).

*Short* highlights the shortcomings of the search warrant in this case. The search warrant for the T-Mobile iPhone SE did not contain any temporal limitations, and it did include language akin to the "any and all" phrasing that, as we have already explained, will not satisfy the particularity requirement in most cases.

37

Second, the State cites an Ohio case for the proposition that a catch-all provision in a warrant "must be read in conjunction with the list of particularly described items which preceded it pertaining to the crimes alleged." *State v. Maranger*, 110 N.E.3d 895, 911 (Ohio Ct. App. 2018) (citation omitted). But in the section of Detective Lembo's affidavit in which he described the items for which he was seeking authorization to search, he did not link those items to the robbery of Mr. James-Parks. Although Detective Lembo provided the information about the robbery in the probable cause section of the affidavit, it is the request to seize particular items – which was set apart in its own section of Detective Lembo's affidavit – that has primary significance in assessing compliance with the particularity requirement.[17] Moreover, nowhere in the affidavit did Detective Lembo explain why there was probable cause to believe that at least two of the categories of records he sought to seize – pictures and videos – would contain evidence of the robbery. This undercuts the State's attempt to rely on the items that came after "[a]ll information [and] data" in Detective Lembo's identification of the items for which he was seeking authority to search. Detective Lembo's description of items to be seized reads more like a template than a carefully considered list of categories based on the affiant's assessment of probable cause.

Finally, we are unpersuaded by the State's contention that we must assess the particularity requirement in light of the "Goldilocks problem" that confronts a police

---

[17] For the same reason, and contrary to the State's argument, severing the catchall language from either the warrant itself or the "description of the items to be seized" in the affidavit, would not cure the particularity problem.

officer who suspects that a cell phone contains evidence of a crime. According to the State, "[i]f investigators are too specific in describing what they plan to search, they risk being unable to discover evidence of a crime…. If police instead describe a broad range of items they wish to search on a phone, they run the risk of the warrant being characterized as an impermissible 'general' warrant. Under Richardson's approach, they must draft language that is 'just right,' lest the warrant be ineffective or defective."

The Fourth Amendment requires that a search warrant be reasonable, not "just right," in describing the items to be seized with particularity. Reasonable minds may differ on how best to draft a proposed search warrant so that it complies with the particularity requirement, given the unique facts and circumstances of a specific investigation. One issuing judge may believe that a temporal limitation is all that is required in a given case, while another issuing judge reviewing a similar case may decide that a warrant will be sufficiently particular if it allows the officers to search in only one or two applications on the phone in question. Courts reviewing the decisions that issuing judges make about how to comply with the particularity requirement should be mindful of the challenges inherent in the cell phone context. But, in the end, the Constitution demands particularity, and issuing judges therefore must ensure that all search warrants, including cell phone search warrants, are sufficiently particular. While reasonable minds may differ at times on whether a warrant is sufficiently particular, one thing is clear: given the privacy interests at stake, it is not reasonable for an issuing judge to approve a warrant that simply authorizes police officers to search everything on a cell phone. Because that is what the search warrant did in this case, it violated the particularity requirement of the Fourth Amendment.

2. The Good Faith Exception Applies, As Officers Executing the Warrant Acted Reasonably in Relying on the Warrant's Validity.

The exclusionary rule, which was adopted by the Supreme Court in *Weeks v. United States*, 232 U.S. 383, 389 (1914), and applied to the states through the Fourteenth Amendment to the United States Constitution, is "ordinarily ... the appropriate remedy for a violation of the Fourth Amendment." *Agurs v. State*, 415 Md. 62, 76 (2010) (quoting *Myers v. State*, 395 Md. 261, 278 (2006)). When a court determines that a violation of the Fourth Amendment has occurred, however, exclusion of the fruits of the unreasonable search is not automatic. *Herring v. United States*, 555 U.S. 135, 137 (2009). Instead, the exclusion of evidence "has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). The underlying rationale behind the exclusionary rule is to deter misconduct by law enforcement:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

*Leon*, 468 U.S. at 919 (internal quotation marks and citations omitted).

Therefore, a reviewing court should only exclude evidence "if the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* (internal quotation marks and citation omitted). The exclusionary rule does not apply where the officers reasonably relied on the issuance of the warrant. *Id.* That is the case because "the marginal or nonexistent benefits

40

produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id*. at 922. For these reasons, "suppression of evidence obtained pursuant to a warrant should be ordered on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id*. at 918.

There are four recognized circumstances in which an officer's reliance on a search warrant would not be reasonable and the good faith exception therefore would not apply:

> (1) the issuing judge was misled by information in an affidavit that the officer knew was false or would have known was false but for the officer's reckless regard for the truth;
> (2) the issuing judge wholly abandoned his or her detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in probable cause as to render official belief in its existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably believe it to be valid.

*See Patterson v. State*, 401 Md. 76, 104 (2007) (citing *Leon*, 468 U.S. at 923). Of these four situations, only the fourth one is at issue in this case.

Richardson argues that the good faith exception should not apply here, because the officers who executed the search warrant should have known that the warrant did not meet the Fourth Amendment's particularity requirement, and thus their reliance on the warrant was unreasonable. We disagree.

If Detective Lembo's affidavit had not been incorporated into the warrant, the good faith exception would not be applicable.[18] But the information in the affidavit, which was incorporated in the warrant, provided the executing officers with detailed information about the robbery under investigation, including the suspects' use of the letgo app. Although we read the affidavit as seeking authorization to search for everything on the phone, an officer reading the affidavit reasonably could have interpreted it as limiting the search for evidence of the crime under investigation – *i.e.*, the robbery of Jonathan James-Parks. Until today, this Court has not analyzed whether a cell phone search warrant that allows officers to search an entire phone for evidence of a particular crime satisfies the particularity requirement. Courts around the country have answered this question differently. *Compare, e.g., Burns*, 235 A.3d at 774-75 (search warrant invalid for lack of particularity where it authorized officers to search for "all records" and "any evidence" on the phones related to violations of the first-degree murder statute), *with State v. Johnson*, 576 S.W. 3d 205, 222 (Mo. Ct. App. 2019) (citing cases for the proposition that "the particularity requirement in a warrant authorizing the search of all data or all files in a cell phone is met so long as the warrant constrains the search to evidence of a specific crime"). In this opinion, we have stated that, in this case and with respect to the vast majority of Maryland cell phone search warrants, the answer to that question is "no." But we cannot fault the officers who executed this search warrant for thinking that the answer was "yes."

---

[18] Thus, two of the cases upon which Richardson relies – *Clough* and *Fleet Mgmt.* – are distinguishable. In those cases, the affidavits in support of the search warrants were not incorporated into the warrants. *See Clough*, 246 F. Supp. 2d at 88; *Fleet Mgmt.*, 521 F. Supp. 2d at 444.

42

In sum, the warrant – as supplemented by the incorporated affidavit – was not so facially deficient that the executing officers acted unreasonably in relying on it. Thus, the good faith exception to the exclusionary rule applies here.[19] For this reason, we conclude that the circuit court properly denied Richardson's motion to suppress the fruits of the warrant to search the T-Mobile iPhone SE.

## IV

## Conclusion

Richardson abandoned his backpack when he fled from the scene of the fight without saying a word to Corporal Young about his backpack. Thus, the warrantless search of the backpack was constitutionally permissible. The warrant that authorized the search of the T-Mobile iPhone SE did not satisfy the particularity requirement of the Fourth Amendment, as it allowed police to search everything on the device. However, we conclude that the officers executing the search warrant acted reasonably in relying on the search warrant, and thus the good faith exception to the exclusionary rule applies here. Accordingly, the trial court properly denied Richardson's motion to suppress evidence.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

---

[19] With this opinion, we make clear to Maryland law enforcement officers and to issuing judges that a warrant that permits police to search everything on a cell phone, with no limitations whatsoever on the executing officers' discretion, violates the particularity requirement of the Fourth Amendment. That understanding will necessarily inform a good-faith analysis with respect to any such cell phone search warrants that are issued after today.